Harrison J.,
delivered the opinion of the Court. ■
The plaintiffs in error were indicted in the Circuit Court of Williamson County, for grand larceny, and for receiving stolen property, knowing the same to have been stolen. The indictment contained two counts — one for the taking, stealing and conveying away, two bales of cotton, the property of Thomas B. Bond; and a count for receiving the said cotton, knowing it to be stolen.
At the March Term, 1867, the plaintiffs in error were arraigned and charged upon the .indictment, and entered a plea of not guilty. The jury returned' a verdict of guilty against both defendants, and fixed their term of imprisonment in the Penitentiary at five years. The plaintiffs in error moved for a new trial, which motion was overruled; to which they excepted, and tendered their bill of exceptions, and appealed in error, to this Court.
The bill of exceptions shows, that the defendants, (plaintiffs in error,) moved for a severance, which was overruled; to which ruling of the Court they excepted, *41 and offered to make an affidavit, stating their grounds for a severance. After the jury were sworn, they presented their affidavit, stating, in substance, as a ground for severance, that their defenses, respectively, are antagonistic. The plaintiff, George Emanuel, who is a negro, states, he is advised, that, unless he elects to go to trial jointly with his co-defendant, (who is a white man,) he has a right to challenge, peremptorily, twenty-four jurors. He states, further, that there were rejected by his co-defendant, without his consent, and contrary to his wishes, after being passed upon by the State,, four jurors mentioned, and others, and without his having the opportunity of selecting or rejecting them, and in opposition to his wishes, and depriving him of a trial by a jury selected by him, and by the State.
The affidavit of the plaintiff in error, Roach, in support of the application for a severance, states, that his defense and that of Emanuel, was diametrically opposed to each other; that he is advised, that, unless he elected to go to trial, or plead jointly, with his co-defendant, (which, he states, he refused to do until formally' arraigned at the bar with his co-defendant,) he was entitled to twenty-four challenges, and to select persons from such as have been passed to him by the State; and he makes the statement as to his having been deprived of the right to select eight persons named in the affidavit, and others who he was desirous. should try his case, but who were peremptorily challenged by Emanuel; that he has been forced to be tried by a jury selected by his co-defendant.
The defendants asked that the affidavits for a sever- *42 anee should be received, as having been filed before the jury were sworn, which was refused by the Court.
The testimony in the case, is, in substance, as follows : The cotton was taken in Williamson County from the prosecutor, Bond, on the night of the 26th of November,, 1866. Bond shw tracks of a wagon; saw no tracks of men or horses. It rained hard on the night the cotton was taken. He followed the tracks, going South through Spring Hill. About a-half-a-mile beyond Spring Hill, the wagon turned off into a field; thence about a-half-a-mile, into a dense thicket, where it seemed to have turned and come out at the place where it entered the thicket. The prosecutor after-wards, (it is not stated how long,) rode behind the two-horse wagon of George Emanuel, and observed that its track, was the same as that he saw at the gin, and where it turned' out in the field. About a month af-terwards, his attention was called to a wagon passing his (prosecutor’s) house, going north with a bale of cotton. He stopped it. Jesse Petway, a negro", George Helton, and defendant Roach’s wife, were in the wagon. Upon examination, he believed the bale to be one of the same taken from his press-shed, as the cotton bale was wider at one end than the other, a peculiarity of the bales pressed at his press, and having the “Baugh Bailing” on it. From information given by parties in the wagon, he went to defendant Roach’s house, in Maury County, about thirteen miles distant, and found' 338 pounds of cotton, in a bed tick, part of it damaged, as if from wetting. The bale in the wagon was muddy, and appeared to have been wet. Defendant *43 Roach, after his arrest, told the prosecutor, that his co-defendant, George Emanuel, and George Haddock, had brought the cotton to his house, and that part of it had been put in ticks and part thrown into the river. George Haddock disappeared after George Emanuel’s arrest. Witness recovered out of the river, near Roach’s, the “Baugh Bagging” of another hale. Witness ginned cotton for his neighbors, some of whom used the “Baugh Bagging.”
W. P. Linkerhoker, who had charge of the prosecutor’s gin, discovered the wagon tracks at the gin and in the field, and claimed to identify the bale recovered, by its shape — the “Baugh Bagging,” and the peculiarity of the knot of the rope.
John Cowsert saw George Emanuel carrying the fore-wheels and tongue of his wagon to the shop, early the next morning after the cotton was taken. Emanuel’s wagon was old and shackling. Saw defendant Roach going to the house of Emanuel, the day before the cotton was taken; but never knew of any intimacy between them.
George Helton, who was with the wagon conveying the bales of cotton to Nashville, when stopped by the prosecutor, says the bale of cotton was brought from the house of defendant Roach. He is a brother-in-law of defendant Roach; was at defendant Roach’s on the night of the 26th of November, 1866; and states, that two bales of cotton was brought there about midnight, by defendant, George Emanuel, and another negro, he did not know — one of which bales was the same as the one on the wagon when it was stopped by the *44 prosecutor. Emanuel left Roach’s house in a short time; saw him at Roach’s shortly after; soon after which, Skillet threw the cotton in the river. Roach was not present, and took no part in throwing the cotton in the river.
Roach’s sister-in-law lived with him, and was at his house on the night of the 26th of November, 1866, when two bales of cotton was brought there by defendant, George Emanuel, and another negro, about midnight. They left immediately. The cotton was brought into the room, and no effort was made to hide it. Part of one bale was put in the bed-tick; the other bale, her sister, Mrs. Roach, and Jesse Petway, took to Nashville, about a month afterwards. Roach had been selling goods and groceries at Spring Hill, in 1865, and told his sister-in-law that George Emanuel owed him for goods and a horse, and had brought cotton to pay it. Skillet came to Roach’s after George Emanuel, and threw cotton into the river.
Jesse Petway, who took the bale of cotton to Nashville, found it under the bed at Roach’s house, in a small room, which was eighteen feet square; started with the bale of cotton, Roach’s wife, and George Helton, at 2 o’clock, in the morning; but explains, that the reason why Mrs. Roach started at that time, was, that she wanted time to sell the cotton and return from Nashville that evening, by the cars.
Billy Blain saw Skillet at George Emanuel’s house the day the cotton was taken; had seen Roach going in the direction of George Emanuel’s house several times before *45 tbe cotton was taken, but does not know that be went there.
The testimony for the defense, shows little, except that, in the summer of 1866, one of the witnesses hired George Emanuel to haul some hay over a rough dirt road, and that his wagon broke down with a load of about 500 pounds, which was introduced, evidently, to show that Emanuel’s wagon would not bear the weight of two bales of cotton, without breaking down.
Martha McCarroll shows, that she was cooking, milking, and cleaning up George Emanuel’s house, before and at the time, the cotton was said to have been taken, and went home every night and returned early next morning. He started home with witness the same night the cotton was said to have been stolen, about 8 or 9 o’clock; stopped on the way, for shelter from the rain. It seems that, when they got to witness’s father’s house, George stopped outside the house, and had some conversation with the father of witness. Her statement is corroborated by that of her father.
The blacksmith at Spring Hill mended a wagon for Geo. Emanuel on the day after the cotton was said to have been taken. The hounds and tongue were broken — wagon very muddy.
C. A. Merrill and J. G. Neely testify, that gins for the public, use “Baugh’s Bagging,” and it was in general use in the county.
The jury returned a verdict of guilty against both defendants, and fixed the term of imprisonment of defendants at five years. Defendants moved for a new trial, which was overruled. They then moved in arrest *46 of judgment; which motion was also overruled; and they appealed in error to this Court.
It appears from the bill of exceptions, that the de-féndants, when brought to the bar of the Court, and arraigned, moved the Court for a severance, as their defenses were antagonistic; which motion was overruled; to which action of the Court, the defendants excepted, and offered to make affidavits, stating, the grounds for severance; and then they joined in a plea of not guilty, or such a plea was entered. After the jury was sworn, defendants filed their affidavits before referred to, showing grounds for the severance asked for, and moved the Court that they, the affidavits, be received as having been filed before the jury was sworn, to- which the Court assented; and asking the Court that the severance be allowed, which was refused.
The Court charged .the jury, (among other things not necessary to notice,) that, if they were satisfied that the two bales of cotton were stolen by defendant, Greorge' Emanuel, or some other person or persons, in Williamson County, and that the cotton was carried to the house of defendant, Roach, in Maury County, and there received by him, knowing the same to have been stolen in Williamson County, and afterwards, the same cotton, or any part thereof, was, by the defendant, Roach, or any other' person acting under his direction or authority, brought into the County of Williamson, and the same was, in said County of Williamson, seized by the prosecutor, in transfer to Nashville, then that the defendant Roach would be guilty as charged, and it would not be necessary that the proof should *47 show, that he himself, was present with those who were hauling the cotton when seized. If the defendant’s wife was along with the wagon, as his agent, acting under his control and directions, the offense of receiving the stolen property and the fraudulent intent to deprive the owner thereof in Williamson County, as charged in the indictment, would be fully made out.
We think there are two grounds on which the judgment in this case, should be reversed, and the cause remanded.
1st. The defendants, on" the grounds shown by them, in their affidavits, and which were treated as filed before the jury were sworn, should have had a separate trial. If they had plead jointly, it would have been an election to be tried jointly, as held in Hill vs. State, 2 Yer., 246. But there was no such election in this case; for, although the minutes of the judgment, show that they plead not guilty, yet, the bill of exceptions show, that, upon being arraigned, the defendants asked for a severance, and offered to show grounds therefor, which was refused, and after the jury were sworn, did present their respective affidavits, showing grounds, and the Court consented to treat the affidavits as having been filed before the jury was sworn, but refused to permit defendants to sever on the trial. The case of TTill vs. The State simply decides, that, as Hill pleaded jointly with his co-defendant, Williamson, that that was an election to be tried jointly; and the decision of that case was evidently placed upon the ground that Hill had no good reason to sever in his defense; and it is *48 laid down, that if any good cause for a separate trial intervened between tbe time of pleading and tbe trial, it rested on tbe defendants to show it; thus leaving tbe inference, clearly, that if tbe defendants did not elect by a joint plea, to be tried jointly, they would be entitled to be tried separately, if they showed gpod cause for tbe severance. We think it clear in this case, that tbe defendants, whose defenses were antagonistic, should not have been forced to go to trial jointly. In many cases, tbe ends of justice will be better attained by granting separate trials ‘to defendants jointly indicted. Tbe case under consideration, furnishes an illustration of tbe truth of tbe proposition. One of tbe defendants was a white man, and tbe other a negro; their affidavits incorporated in' the bill of exceptions, show that several persons presented 'as jurors, passed over to defendants, respectively, were challenged by tbe other defendant, thus depriving each of them of a selection of persons whom each desired to try bis case; for it has been settled ever since tbe case of King vs. The Three Salsbury’s, 1 Plow. Com., 108, and the practice has never been changed, that where tbe right of peremptory challenge exists, and two are arraigned, and plead not guilty, they each have their undoubted right to their full number of peremptory challenges; a.nd if one elect a juror, the other may challenge him, in which event, he must be set aside. The defendants were jointly indicted for stealing the cotton, and for receiving it, knowing it to have been stolen; and the proof in the cause,, and the peculiar . circumstances of the case, show that injustice may have *49 been done the defendants, or one of them, by putting it in the power of either to select a jury to the- prejudice of the other.
But, however this may be, there was error in the charge of the Court below in one particular, at least. The proof shows that the cotton was stolen in Williamson County, and even if the defendant Roach was guilty under the first count in the indictment, and even though he received the cotton, knowing it to have been stolen, and with the fraudulent intent which must exist to make out the case against him, the offense of receiving the cotton was committed in Maury County, the cotton remaining at his house in Maury County, for one month. The offense was, the receiving the stolen property, knowing it to be stolen, with intent, etc. The removing of the property, so received, to Nashville, a month. afterward, did not add to or aggravate the offense. The offense committed in Maury, was complete when the cotton was received, with knowledge that it was stolen. Hence, the authority of Hill vs. The State, in 1 Head, has, as we think, nothing to do with the case; for it really made no difference, whether the possession of Mrs. Roach, the wife of defendant was the possession of defendant, or the. prosecutor. The removal of the cotton by Mrs. Roach, or any one else, did not constitute a separate offense, upon which the defendant Roach could be found guilty, under the second count in the indictment. Can it be said, that the sending of the stolen goods to Nashville by Roach, through an agent, even though the cotton was carried back into, and through the County of Williamson, would make out the *50 offense of receiving the stolen cotton, so as to give the Circuit Court of Williamson, jurisdiction to try the defendant on this count ?
The defendant, Roach, should have been indicted in Maury County, for receiving the stolen cotton, even without joining the other defendant; for, receiving stolen goods is a substantive felqny under the statute; and we have held, that the principle of law that secures accessories, after the fact from trial, except with the principal felon, unless the principal felon has been .previously convicted, does not apply to a' receiver of stolen goods.
The Code, sec. 4974, enacts, that the local jurisdiction of all offenses, unless it is otherwise provided by law, is .in the county in which the offense is committed. Sec. 4974, applies only in cases where the particular offense was committed, partly in one county and partly in another. Sec. 4978, provides, that, where property is stolen in one county and brought into another, the jurisdiction is in either county; but, it is manifest, .that, in this case, this would only authorize the trial of defendants in either Williamson or Maury, for the larceny, and would not extend to the separate offense of receiving the stolen cotton, because, the commission of the latter named felony, was completed in the county of Maury, alone.
The fifty-sixth section of the Act of George III, can have no application to the case, since our statutory enactments were made.
The receiving of stolen property is a distinct and independent felony; and we know of nothing in our *51 practice, or in law, that authorizes the trial of the accused in Williamson County, for a felony committed in Maury County.
We reverse the judgment of the Circuit Court of Williamson, and remand the case for a new trial, upon the first count in the indictment.