ROUNDS *v.* STATE.

(*Jackson*, April Term, 1937.)

Opinion filed June 10, 1937.

512

John W. Hart, of Union City, and Carmack Murchison, of Jackson, for plaintiff in error.

W. F. Barry, Jr., Assistant Attorney-General, for the State.

Mr. Chief Justice Green delivered the opinion of the Court.

The defendant, Robert Rounds, along with Odell Carter, both negroes, were indicted for the murder of a

white man named Thomas Harris and convicted of murder in the first degree. The jury fixed the punishment of Carter at imprisonment for life and fixed the punishment of Rounds at death by electrocution. Carter accepted his sentence, but Rounds has appealed in error to this court.

Harris was a merchant having a country store about two miles from Humboldt on the Alamo road. His residence was nearby. The wife of Harris testified that he was aroused about the middle of the night of January 25, 1936, by some noise near his store. That there had been robberies in the neighborhood and Harris had been missing coal. He armed himself with a pistol and a shotgun and went down to the store. A short while later Mrs. Harris heard shooting near the store and called to her husband, getting no response. A negro living across the road from the store was awakened, went to the scene of the shooting, and found Harris in a dying condition. This negro, Mrs. Harris, and a brother of Harris living in the neighborhood put the latter in an automobile and brought him to the hospital at Humboldt. He died about the time he reached there without making any statement.

A sack partially filled with coal and a glove were found on the coal pile in the rear of Harris' store. He had fired his pistol once and his shotgun once. He had been shot in the abdomen with a 22-30 pistol. Another 22-30 bullet was found in the store near the place where he fell.

Bloodhounds were brought to the scene and followed tracks to a point a short distance away where the evidence indicates an automobile had been parked. The dogs could not, of course, pursue the tracks further.

■■ There is evidence in the record indicating that the defendants, Rounds and Carter, committed this murder. All this evidence, however, is circumstantial, except confessions to which we will immediately refer. The confession of Carter was properly ruled inadmissible as to Rounds. We think the confession of Rounds was improperly obtained and should likewise have been excluded. For error in admitting this confession and for other errors, the judgment must be reversed. Aside from the confession of Rounds, the evidence against him is of such a character as makes us hesitant to say it would support a conviction carrying a death sentence. Since the case must go back for another trial, we forbear further comment on the proof.

Harris was killed Friday night or shortly after midnight Saturday morning. Suspicion pointed to Rounds, and he was arrested early Saturday morning and brought to a place of confinement at Humboldt. He was questioned by officers as to his whereabouts during the night before and he told them that he was at Union City. The officers took him to Union City Saturday morning, checked up his story, and found it untrue. He admitted on the trial that the statement was untrue. According to his testimony, he and Carter had been out on a chicken stealing expedition the night Harris was killed, and he said that he told the officers this story about being in Union City for that reason.

After returning from Union City Saturday, Rounds was taken to the county jail of Gibson county at Trenton. Carter was arrested some time Saturday when the officers found out he had been with Rounds on the night before, and he was also taken to the jail at Trenton.

It seems that Rounds was questioned some, as well as Carter, during Saturday and Sunday and during the day-time Monday. They do not say that they were in any way mistreated before Monday night. They denied their guilt of the murder of Harris during this period.

Rounds states that on Monday night he was taken from his cell in the Trenton jail to a room in the courthouse known as the "jury room." That he was seated on a chair or stool and whipped by the officers in an effort to extort a confession from him. He says that he was not permitted to lie down or sleep Monday night, or on Tues-day, day or night. That he was kept awake all day Wednesday and all Wednesday night. That he was like-wise kept awake all day Thursday and Thursday night. He testified that during this time his legs and arms were twisted and bent back by the officers and he was subjected to painful torture by them in their efforts to make him confess.

It seems from the testimony of the officers that just before day on Friday morning Rounds did make a con-fession in which he admitted that he and Carter went to Harris' store; that Harris interrupted them while they were endeavoring to steal some coal; and that Rounds and Harris exchanged shots.

All the officers who had access to Rounds during the period mentioned deny that he was struck; that his limbs were twisted; that he was subjected to any physical violence or any way mistreated. These officers, however, admitted that six of them, taking turn about, questioned Rounds from Monday night until early Friday morning when they obtained the confession. The officers, while they said that Rounds had opportunity to sleep during this period, are not at all convincing in their testimony

on this point. They admitted that Rounds was kept out of his cell in this courthouse room much of the time, if not most of the time, from Monday night until Friday morning, and they admitted that they would arouse him and question him at frequent intervals all during this period.

Rounds said that he did not sleep more than two hours from Monday night until Friday morning. Although this statement may not be strictly accurate, we think it evident from the record that he was kept awake most of this time.

To deprive a human of sleep for four days and nights is a form of torture not less severe than physical violence. See *Ziang Sun Wan* v. *United States*, 266 U. S., 1, 45 S. Ct., 1; 69 L. Ed., 131. The effect of this treatment on Rounds is apparent from uncontradicted testimony as to his physical condition just after his confession was obtained. The sheriff and all the officers testified that Rounds went into a religious frenzy, said he was talking to Jesus, began shouting and demonstrating as if at a negro camp meeting, and generally making so much noise that the officers called in the county physician about daylight Friday morning shortly after the confession had been procured.

This physician corroborated the testimony of the officers as to the condition of Rounds, and the doctor thereupon found it necessary or proper to administer to Rounds a hypodermic injection of one-half grain of morphine to quiet him down.

The officers testified that Rounds put on this demonstration because he claimed to be happy to have gotten the load of guilt off his mind by the confession. The substance of Rounds' testimony is that he was happy

because the efforts of the officers to make him confess had ceased.

Whether the officers subjected this defendant to physical violence was a matter of controversy on the trial below and we need not go into that. That the officers did subject him to a course of treatment—keeping him awake as stated—that rendered him hysterical and necessited the attendance of a physician is perfectly obvious.

■ A confession so obtained is not admissible. Resort to torture, in any form, by officers of the law, is not to be countenanced.

In *Brown* v. *Mississippi*, 297 U. S., 278, 56 S. Ct., 461, 80 L. Ed., 682, the Supreme Court of the United States has recently held that the use of a confession obtained by torture is a denial of due process under the Fourteenth Amendment to the Federal Constitution, and we think it immaterial whether the torture was administered by brute force or by some method more refined. See, also, *State* v. *Fields*, 7 Tenn. (Peck), 140; *Ann* v. *State*, 30 Tenn. (11 Humph.), 159; *Deathridge* v. *State*, 33 Tenn. (1 Sneed), 75, 76; *Strady* v. *State*, 45 Tenn. (5 Cold.), 300; *Self* v. *State*, 65 Tenn. (6 Baxt.), 244.

■ On the trial below Rounds testified in his own behalf. Carter did not take the stand. After giving his own evidence and after the examination of two or three other witnesses offered in his behalf, Rounds undertook to call Carter as a witness. The District Attorney-General objected to Carter's testifying on the ground that he did not testify before other testimony for the defense was heard. The court sustained this objection. We think, under the circumstances of the case, this was error.

■ Section 9782 of the Code provides that: "In the trial of all indictments, presentments, and other criminal

proceedings, the party defendant thereto may, at his own request, but not otherwise, be a competent witness to testify therein.'' Since *Richards* v. *State*, 91 Tenn., 723, 20 S. W., 533, 30 Am. St. Rep., 907, this statute has been construed to mean that a defendant thus rendered eligible to testify, and availing himself of the privilege, becomes a witness for all purposes. He may testify in his own behalf, or, he being willing, he may testify against another defendant with whom he is jointly prosecuted, or, he being willing, he may testify in behalf of another defendant with whom he is jointly prosecuted.

■ Section 9783, of the Code provides that: ''The failure of the party defendant to make such request and to testify in his own behalf, shall not create any presumption against him. But the defendant desiring to testify shall do so before any other testimony for the defense is heard by the court trying the case.'' Under this statute a defendant desiring ''to testify in his own behalf'' shall do so before any other testimony for the defense is heard. The statute is imperative. *Morgan* v. *State*, 86 Tenn., 472, 7 S. W., 456; *Clemons* v. *State*, 92 Tenn., 282, 21 S. W., 525.

The effort here, however, was not to have Carter testify ''in his own behalf'' but in behalf of Rounds. Carter being willing to testify, Rounds was entitled to the benefit of his evidence. Carter's evidence coming in after other witnesses for the defense were heard would not have been admissible in his own behalf under the statute, but it would have been admissible in behalf of Rounds. So limited, the evidence should have been admitted.

■ There were statements in the confession obtained from Rounds about the shooting of another man in which

shooting Rounds and Carter had participated. This part of the confession was especially objected to by attorneys for Rounds but the objection was overruled. We think this was error.

■ Where a confession indicates that the accused has been guilty of another offense in addition to that for which he is being tried, that part of the confession relating to the distinct offense is inadmissible if it can be separated from the portion of the confession relating to the charge in issue. *People* v. *Spencer*, 264 Ill., 124, 106 N. E., 219; *People* v. *Loomis*, 178 N. Y., 400, 70 N. E., 919.

It was, perhaps, proper for the trial judge to hear all of the confession of Rounds and all of the testimony of the sheriff as to how this confession was obtained, when the court made the preliminary examination of the competency of the confession in the absence of the jury. It seems to us, however, that permitting that part of the confession connecting Rounds with another robbery and shooting must have been prejudicial to him. The irrelevant portion of the confession might readily have been separated.

For the reasons indicated, the judgment below is reversed and the case remanded for another trial.