**Orville Curtis ALDRIDGE, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

Dec. 8, 1977.

Certiorari Denied by Supreme
Court March 6, 1978.

C. Berkeley Bell, Jr., Greeneville, for appellant.

Brooks McLemore, Jr., Atty. Gen., Patricia J. Cottrell, Asst. Atty. Gen., Nashville, Charles E. Fraley, Jr., Asst. Dist. Atty. Gen., Charles R. Terry, Morristown, for appellee.

## OPINION

DAUGHTREY, Judge.

As the result of an assassination plot to kill District Attorney General Heiskell Winstead and his wife, Barbara Winstead, the defendant-appellant, Orville Curtis Aldridge, was indicted for solicitation of murder in the first degree. Aldridge was subsequently convicted by a Hawkins County jury and sentenced to six to twenty-one years imprisonment. On appeal he attacks (1) the validity of the indictment, (2) the failure of the trial court to order a continuance, (3) both the sufficiency of the evidence and the admissibility of certain items of evidence introduced at trial, and (4) the trial court's refusal to order a mistrial following the entry of guilty pleas by his two co-defendants after trial had begun. Because we find no error, we affirm the conviction.

■ The defendant first contends that the indictment returned against him was not sufficiently specific to protect him from subsequent prosecution for the same offense, because it is not possible to tell which of several arguably applicable offenses is charged in the body of the indictment. We reject this contention. The language of the charging instrument is almost exactly that of the applicable statute T.C.A. § 39–115 ("Solicitation to commit crime"), and it therefore follows that the notice requirements which must be met by an indictment have been fulfilled. *Erby v. State,* 181 Tenn. 647, 184 S.W.2d 14 (1944). Nor is the indictment duplicitous because it charges the existence of more than one intended victim. According to the proof at trial, the solicitation involved was a single act; therefore, soliciting two murders constituted part of the same transaction. Under such circumstances, conduct which might otherwise involve the commission of two offenses may be charged in one count of an indictment. *State v. Smith,* 194 Tenn. 608, 253 S.W.2d 992 (1952); *Cornell v. State,* 66 Tenn. 520 (1874); *State v. Ailey,* 50 Tenn. 8 (1870); *Womack v. State,* 47 Tenn. 508 (1870). The trial court did not err in overruling the defendant's motion to dismiss the indictment, and the assignment is likewise overruled.

■ There was also no error in the trial judge's refusal to grant a continuance. The defendant's attorney contends that he was not given adequate time to prepare a defense, citing his inexperience in criminal cases, the relatively short period of time between his appointment and the trial (25 days), and the even shorter period between his first interview with the defendant, who was incarcerated in the State Penitentiary for another offense, and the trial (nine days). But the record refutes the attorney's modest assessment of his own professional abilities. The technical record reveals that he filed a total of nine pretrial motions, and a review of the bill of exceptions demonstrates vigorous and able pursuit of his client's interests at trial. Furthermore, the record fails to disclose that the defendant's case was prejudiced in any way by inadequate preparation, nor are any such specific instances alleged in the motion for a new trial or in the brief filed on appeal. We note also that prior to trial the district attorney offered to furnish defense counsel with a criminal investigator from his office, in order to aid the defendant in finding witnesses alleged to be "scattered over several counties." There is no intimation in the record that any material defense witnesses were unavailable at trial. We conclude that the defendant's appointed attorney did a commendable job in the face of

overwhelming evidence against his client, and we find no abuse of discretion in the trial court's denial of a continuance. The assignment of error is therefore overruled.

■ The defendant next attacks the sufficiency of the conviction evidence, citing the "incredibility" of an informant who testified at trial and the alleged inadmissibility of a tape recorded conversation between the defendant and the informant. Not only are we precluded from reversing the conviction based on the credibility of witnesses at trial, *State v. Grace*, 493 S.W.2d 474, 476 (Tenn.1973), but we find that there was ample additional evidence to establish the defendant's guilt. Moreover, the circumstances surrounding the tape recording are similar to those in *Clariday v. State*, 552 S.W.2d 759 (Tenn.Cr.App.1976). Here, as in *Clariday*, the recipient of the telephone call, acting as a police informant, recorded the conversation as a result of the defendant's misplaced confidence in the informant. There was no constitutional violation involved in this procedure. *Clariday, supra* at 769. Nor did the trial court err in ruling that the incompleteness of the tape recording (due to inadvertent "tape overs" by an undercover agent) affected its weight and not its admissibility, finding that it was otherwise properly authenticated. The assignments relating to the sufficiency and the admissibility of the convicting evidence are therefore overruled.

■ Lastly, the defendant assigns as error the trial court's failure to grant a mistrial following the mid-trial decision of his two co-defendants to withdraw their pleas of not guilty and to plead guilty in return for negotiated sentences. This turn of events occurred immediately after direct examination, but before cross-examination, of the State's principal witness, an undercover agent working in conjunction with the informant and posing as the would-be "hit man." The defendant contends that this situation is analogous to that in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), on the grounds that he was thereby deprived of his right to confront and cross-examine his alleged cohorts, whose statements had been introduced into evidence during direct examination of the undercover agent.

The record shows that the two co-defendants withdrew their pleas of not guilty and re-entered pleas of guilty outside the presence of the jury. When the jury returned to the courtroom, the trial judge gave appropriate cautionary instructions concerning the absence of the co-defendants. Furthermore, the testimony of the undercover agent did not violate the rule in *Bruton*. Although he testified to extrajudicial statements of the co-defendants which tended to establish the commission of the offense in question, none of those statements in any way inculpated the defendant. Far more damaging to the defense was the agent's testimony concerning highly incriminating extrajudicial statements made by the defendant himself and as to these statements the agent was subjected to rigorous cross-examination. There was no error, and, accordingly, the assignment is overruled.

The judgment of the trial court is affirmed.

WALKER and BYERS, JJ., concur.