**Gloria Ann DORSEY and Henry Norman Dorsey, Appellants,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

March 21, 1978.

Certiorari Denied by Supreme Court June 12, 1978.

Michael D. Noel, James R. Omer, Nashville, for appellants.

Brooks McLemore, Jr., Atty. Gen., William O. Kelly, Asst. Atty. Gen., Jude T. Lenahan, Asst. Dist. Atty. Gen., Nashville, for appellee.

DAUGHTREY, Judge.

## OPINION

This prosecution arose from the $200,-000.00 armed robbery of Diamond Brokers,

Inc., a Nashville jewelry company. Metro police ultimately identified four men and two women as members of the group that planned and executed the robbery. Of the six conspirators, one Nate Thomas was never apprehended. A second suspect, Jack Barrett, was arrested and released on bond, but apparently was murdered in New Jersey before the case reached the grand jury. The remaining four suspects, Henry Norman Dorsey, Gloria Ann Dorsey, Carl Carlson, and Trudy Fisher, were jointly indicted on a charge of armed robbery and scheduled for trial on the same date. The trial lasted five days. On the first morning, all four co-defendants filed motions for severance.

■ Carlson's motion was accompanied by an affidavit in which he stated that he intended to change his not guilty plea to a plea of guilty and to "submit the question of [his] punishment . . . to a jury." The other three co-defendants filed similar motions to sever, but theirs were not accompanied by affidavits.[1] The Dorseys maintained by way of oral argument that to put them to trial with a co-defendant who was conceding his guilt before the jury would inherently prejudice the jury on the question of the guilt or innocence of the remaining defendants. All four motions for severance were denied by the trial judge, but on the heels of this ruling he did order a severance as to Trudy Fisher, following the State's announcement that her case was to be retired. Fisher later testified against her former cohorts as a witness for the prosecution.

At the end of the five day trial, the jury sentenced Carlson to fifteen years on his plea of guilty, and convicted Norman Dorsey and Gloria Dorsey of armed robbery, sentencing them to thirteen years and ten years, respectively. Carlson does not contest the judgment below, but the Dorseys have appealed their convictions, filing some thirteen assignments of error. The most

serious of these, and the one provoking a separate dissenting opinion by one member of this panel, concerns the trial court's failure to grant a severance under the conditions described above. After a study of this issue and a review of the other assignments of error, we conclude that there was no reversible error committed in the trial court, and we therefore affirm the convictions.

■ The law in Tennessee is well settled that a motion for a severance is addressed to the broad discretion of the trial judge, and that his exercise of discretion in denying such a request will not be reversed unless it appears that the defendants were clearly prejudiced thereby. *Tomlin v. State,* 207 Tenn. 281, 286, 339 S.W.2d 10, 12 (1960). In *Woodruff v. State,* 164 Tenn. 530, 538–39, 51 S.W.2d 843, 845 (1932), the Tennessee Supreme Court noted:

> It may have been to the interest of each [defendant] that he be tried alone, but the orders of the court are molded to protect rights, and not merely the interests, of persons accused of crime. The state, as well as the persons accused, is entitled to have its rights protected, and when several persons are charged jointly with a single crime, we think the state is entitled to have the fact of guilt determined and punishment assessed in a single trial, unless to do so would unfairly prejudice the rights of the defendants.

These defendants allege that they were "unfairly prejudiced" in this instance because (1) their co-defendant, Carlson, went to trial on a plea of guilty and (2) a passing reference was made at trial concerning Carlson's having kidnapped a person during his lone attempt to avoid apprehension. We conclude that neither of these arguments provides a sufficient basis upon which to find that the trial court erred in denying a severance.

---

1. We give the defendants the benefit of the doubt by assuming that this omission was caused by a lack of adequate prior notice that Carlson was going to change his plea. Otherwise, the failure to comply with the mandatory requirement that a motion to sever must be supported by an affidavit would prevent our review of this question on appeal. *Hoskins v. State,* 489 S.W.2d 544 (Tenn.Crim.App.1972).

The Tennessee cases addressing the question of severance appear to fall into one of two groups: those in which the defendants base their request for severance on the existence of antagonistic defenses,[2] and those in which one of the defendants has made a confession which the State wishes to introduce at trial.[3] It does not appear that the situation before us falls into either category. The difference in the nature of the pleas does not necessarily set up antagonistic defenses. *Cf. Self v. State,* 527 S.W.2d 153 (Tenn.Crim.App.1975), in which this court held that there was no error in refusing to grant a severance in a case where the co-defendant failed to interpose any defense to the charge. And despite the views expounded by Judge Galbreath in his dissent, we do not believe this case presents a violation under *Stallard v. State,* 187 Tenn. 418, 215 S.W.2d 807 (1948), or under *Bruton v. United States,* 391 U.S.. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

 In *Bruton,* the United States Supreme Court held that admission at a joint trial of a co-defendant's confession implicating the defendant constituted prejudicial error even though the trial court gave an instruction that the confession could only be used against the co-defendant and must be disregarded with respect to the defendant. Post-*Bruton* cases, as well as the *ABA Standards,* make it clear, however, that the rule in *Bruton* does not apply to confessions which to not implicate the non-confessing defendant, nor does it apply to confessions from which "all references to the moving defendant have been effectively deleted, provided that, as deleted, the confession will not prejudice the moving defendant." ABA Standards Relating to Joinder and Severance § 2.3(a)(ii) (1967). *Accord, United States v. Alvarez,* 519 F.2d 1052 (3d Cir. 1975), *cert. denied Hernandez v. United States,* 423 U.S. 914, 96 S.Ct. 221, 46 L.Ed.2d 143 (1975); *United States v. Gray,* 462 F.2d 164 (5th Cir. 1972), *cert. denied* 409

U.S. 1009, 93 S.Ct. 452, 34 L.Ed.2d 303 (1972); *White v. State,* 497 S.W.2d 751 (Tenn.Crim.App.1973); *Taylor v. State,* 493 S.W.2d 477 (Tenn.Crim.App.1972); *Maxwell v. State,* 1 Tenn.Cr. 335, 441 S.W.2d 503 (1969).

In this respect, the *Bruton* decision was anticipated in large part by an earlier opinion of the Tennessee Supreme Court. In *Stallard v. State, supra,* it was held that:

> If one of several defendants jointly indicted has made admissions or confessions involving another defendant, the court may, in its discretion, order a separate trial, so that the admissions or confessions, while evidence against the one, may not prejudice the other, and where the circumstances are such that an instruction to disregard the confession of one when considering the guilt of the other would prove ineffective to eradicate the impression on the jury the severance should be granted, unless the prosecuting attorney expressly declares that such statements will not be offered in evidence on the trial, or *unless all reference to the moving defendant is eliminated from the confession.*

215 S.W.2d at 812 (citation omitted; emphasis added).

 We thus conclude that the failure to sever in this case is not contrary to the rulings in *Bruton* or *Stallard.* While it is true, as the dissenting judge points out, that a plea of guilty is a "judicial confession," it is equally clear that it is not a statement of the kind contemplated by those cases. Furthermore, the plea in this case contained no reference whatsoever to the remaining defendants, and thus falls outside the proscription of *Bruton* and *Stallard.* The application of *Bruton* and *Stallard* to the situation before us, as urged in the dissent, would wholly remove the trial judge's discretion and would make mandatory the severance of a co-defendant who proceeds to trial on a guilty plea.

---

**2.** *See, e. g., Morrow v. State,* 82 Tenn. 475 (1884); *Roach v. State,* 45 Tenn. 39 (1867).

**3.** This latter category is, of course, the numerically larger of the two, insofar as the number of

reported cases is concerned. *See, e. g., Rounds v. State,* 171 Tenn. 511, 106 S.W.2d 212 (1937); *Strady v. State,* 45 Tenn. 300 (1868); *Hester v. State,* 2 Tenn.Cr. 11, 450 S.W.2d 609 (1969).

■ Although this question has not been treated in a reported case in Tennessee,[4] this court in an unreported decision has previously held that there is no error in failing to sever a co-defendant who is proceeding to trial on a plea of not guilty. *Mark Anthony Brooks v. State of Tennessee,* Court of Criminal Appeals at Knoxville, December 15, 1977. Moreover, the Court has previously held that a change of plea by a co-defendant does not constitute violation of *Bruton* nor entitle the remaining defendants to a severance and mistrial, where proper instructions are given by the trial court. *Aldridge v. State,* 562 S.W.2d 216 (Tenn.Crim.App., 1977; *cert. denied* Tennessee Supreme Court, March 16, 1978); *Mark Anthony Jackson v. State of Tennessee,* Court of Criminal Appeals at Jackson, November 6, 1975. Furthermore, in other jurisdictions that have considered the question, a majority have upheld the right of the trial court to deny a severance even though one of the defendants proceeds to trial on a plea of guilty or changes his plea in mid-trial. *See, e. g., Anderson v. United States,* 270 F.2d 124 (6th Cir. 1959); *contra, Rogers v. United States,* 304 F.2d 520 (5th Cir. 1962); *Sherwood v. State,* 241 Ind. 215, 170 N.E.2d 656 (1960). Under the prevailing federal rule, acceptance of a co-defendant's change of plea from not guilty to guilty has generally been held not error, unless the trial judge did something to emphasize the guilty plea. Annot., 3 A.L.R. Fed. 444.

We thus conclude that the trial judge had the discretion in this instance to grant or deny a severance, and that the refusal to sever must be viewed under the traditional test: were the complaining defendants prejudiced by this action? *Tomlin v. State, supra; Woodruff v. State, supra.* We think they clearly were not. The trial court carefully instructed the jury that they could return different verdicts for the individual defendants, saying that "[i]f there be evidence that sheds light upon the guilt or innocence of one or more defendants and does not shed light upon the guilt or innocence of the others, be careful that you do not let the evidence that sheds light upon the guilt or innocence of one affect your verdict as to the others upon which such evidence sheds no light." In response to the trial court's further charge that they might "convict all of the defendants or . . . acquit all, or . . . convict one or more and acquit the others, and fix such punishment as to each defendant as the law and evidence justifies," the jury apparently made careful distinctions between the defendants, fashioning separate penalties for each according to his or her part in the commission of the offense.

Finally, we note that the evidence against these defendants was so strong as to be properly labelled overwhelming. Thus it is not "a case where, without the existence of a confession [judicial or otherwise] by one defendant, the evidence against another would be too weak to justify a conviction or even where a conviction would be doubtful . . . ." *Ellis v. State,* 218 Tenn. 297, 302, 403 S.W.2d 293, 295 (1966). We conclude that even if there were an abuse of discretion in the trial court's refusal to sever, the resulting error did not affect the outcome of the trial. T.C.A. § 27–117.

The evidence at trial showed that Henry Dorsey checked into a local Ramada Inn on February 22, 1976, and was assigned Room 126. That night the Dorseys, Carlson, and the other members of the group met in Room 126 to plan the robbery which was to occur the next morning. A large part of their conversation was inadvertently overheard by the occupant of the next room (Room 128), a Mr. Bragg, who reported what he had heard to police the following morning.

4. Since the trial of the case at bar, the Tennessee Supreme Court's opinion in *State v. Mackey,* 553 S.W.2d 337 (Tenn.1977), has changed dramatically the scope of evidence admissible at a punishment hearing against the defendant who pleads guilty before a jury. In light of *Mackey,* we think the better practice in the future would be to grant a severance upon the request of either the prosecution or the defense.

Meanwhile, at the site of the robbery, Gloria Dorsey entered the Diamond Brokers office first, followed by Carlson and Thomas, who drew pistols on company employees and carried off the merchandise. An observer across the street saw a man meeting Henry Dorsey's description fire a pistol from the parking lot in front of the building in which the jewelry company was located at about the time the robbery occurred.

Later that day, Diamond Brokers employees identified Gloria Dorsey and Carl Carlson in a lineup as being two of the people involved in the robbery. In addition, Gloria Dorsey's purse was found in the jewelry store after the robbers fled. Most of the participants in the robbery, with the exception of Thomas and Carlson, were arrested in Room 126 of the Ramada Inn shortly after the robbery. Carlson was arrested as he tried to escape Nashville in a commandeered vehicle.

Through information gathered from various sources, Metro police were able to locate automobiles belonging to Barrett and Henry Dorsey. They secured warrants to search these two vehicles and recovered most of the proceeds of the robbery from the trunk of Barrett's car. A guitar-shaped diamond ring taken in the robbery was found in the utility trailer attached to Henry Dorsey's car.

As noted previously, Trudy Fisher testified as a witness for the State. She filled in many details concerning the planning and execution of the robbery, and her testimony was amply corroborated by extrinsic evidence. Fisher attempted, as best she could, to exonerate herself and Gloria Dorsey from any active complicity in the actual hold-up. And it was Henry Dorsey's theory that there was no direct proof of his actual participation in the robbery. However, based on the evidence summarized above, we have no hesitation in concluding that the jury was fully justified in reaching its verdict as to both defendants.

■ The remaining assignments of error require less extended discussion. There was no *Bruton* error with regard to Trudy

Fisher's testimony. She was subject to extensive and very able cross-examination by counsel for both defendants.

■ Nor was there any error in police officers' testimony concerning weapons found in the vehicles but not introduced at trial. There is no "best evidence" requirement as to items of physical evidence, and the failure to produce them as exhibits affects the weight and not the admissibility of testimony concerning such evidence. *Clariday v. State,* 552 S.W.2d 759 (Tenn. Crim.App.1976).

■ Likewise, the testimony of Mr. Bragg, the occupant of Room 128 who overheard the conversation of the conspirators, was admissible despite the fact that he could not identify the individuals who made the statements nor repeat their entire conversation. These statements were fully authenticated through the testimony of Trudy Fisher. Furthermore, as the declarations of co-conspirators, they constitute an exception to the rule against hearsay. *Solomon v. State,* 168 Tenn. 180, 76 S.W.2d 331 (1934). The statements were thus fully admissible; the conditions under which they were overheard and the fact that Mr. Bragg could not repeat the entire conversation affected only the weight to be given the evidence.

■ We find no error in the admission of the motel records. The proof indicates that was substantial compliance with the Business Records Act. T.C.A. §§ 24–712 through 24–715. As to the two originals that were lost or misplaced by the police, there is no allegation of fraud with regard to their loss, no allegation that the photostatic copies were not accurate, and no proof of prejudice in the introduction of the copies. *See generally,* D. Paine, *Tennessee Law of Evidence* § 234 (1974); T.C.A. § 24–711.

■ Nor do we find error in the trial court's discretionary ruling permitting certain witnesses to testify despite the fact that their names were not listed on the indictment and were not furnished by the

State in response to the defendants' discovery motions. The names of these witnesses and the substance of their expected testimony were given to defense counsel some three or four days before testimony actually began, and thus the defendants can claim no surprise nor resulting prejudice. *Compare Aldridge v. State,* 4 Tenn.Cr. 254, 470 S.W.2d 42 (1971) with *Canady v. State,* 3 Tenn.Cr. 337, 461 S.W.2d 53 (1970); *see also Douglass v. State,* 213 Tenn. 643, 378 S.W.2d 749 (1964).

In addition, there was no error in the admission of evidence taken from the trailer attached to Henry Dorsey's automobile. The evidence in question was seized pursuant to a valid search warrant, which described the vehicle to be searched ("a 1972 dark green Cadillac bearing Texas license number EAT821, parked at the Metro Police Dept. Tow-In Lot, 828 5th Ave., No., and a utility trailer with a white top and orange bottom bearing Ala. plates 2RT208, attached to said '72 Cadillac . . . .") with sufficient particularity to satisfy the applicable constitutional requirements. *See Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *Squires v. State,* 525 S.W.2d 686 (Tenn.Crim.App. 1975).

■ Contrary to the defendants' contention, the trial judge did not err in failing to charge the jury on all of the lesser included offenses of armed robbery and robbery, because there was no evidence in the record to support a finding of the commission of a lesser offense. *Johnson v. State,* 531 S.W.2d 558, 559 (Tenn.1975).

■ Finally, we find no abuse of the trial judge's discretion in the seating of an alternate juror as a regular member of the panel. The defendants have failed to show how they were prejudiced by the seating of this juror, alleging only that the trial judge apparently knew before the alternate juror was selected that he would be used to replace a regular juror, who was discovered to have a disabling physical condition after he was selected and sworn but before the alternate juror was selected. The juror in question was selected and seated in conformity with the provisions of T.C.A. § 22–237 and was accepted by all defendants without challenge. There was no error in this procedure.

The defendants' remaining assignments of error attack certain isolated pieces of testimony which, although of dubious probative value, clearly did not affect the outcome of the trial. These, as well as the other assignments discussed above, must therefore be overruled.

The judgment of the trial court is affirmed.

RUSSELL, J., concurs.

GALBREATH, Judge, dissenting.

I respectfully dissent.

Originally, pleas of not guilty were entered to the indictment charging Carl Ludwig Carlson, Gloria Ann Dorsey, Henry Norman Dorsey, and Trudy Elizabeth Fisher with robbery accomplished by use of a deadly weapon. Trudy Fisher agreed to assist the prosecution as a witness against the other defendants and a severance was granted after the State announced that her case was to be retired. Prior to that announcement the trial judge had denied her application in which the State had joined for a severance. This was consistent with a like denial of a motion by the appellants herein, Henry and Gloria Dorsey, for severances. The other co-defendant, Carl Ludwig Carlson, entered a plea of guilty but did not testify. He was, over strenuous objection on behalf of these appellants, tried jointly with them but only as to punishment.

The above procedure violated the constitutional rights of the Dorseys to confront the witnesses against them. Carlson's judicial acknowledgement that he committed the offense, detailed by the allegations in the indictment and the evidence presented, including details of his attempted flight to avoid capture and prosecution, constituted devastatingly adverse evidence that the jury must have considered against the appellants.

The trial judge should, in my opinion, have granted the Dorseys a severance from Carlson. It would have cost the State nothing and would, in all probability, have been favorable to Carlson who was sentenced, on his plea of guilty, to 15 years in the penitentiary while Henry and Gloria Dorsey were sentenced to 13 and 10 years respectively.

The rule in Tennessee is that a trial judge has wide discretion in granting or withholding a severance. He will only be reversed where it clearly appears from the record that a failure to sever the trials will result in undue prejudice to the party seeking the severance. Conversely, a trial judge commits error when he fails to grant separate trials in those instances wherein it is made to appear that it will unduly prejudice one defendant to be tried with another. Such a situation arises in the so-called *Bruton* cases.

In *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), it was spelled out, in effect, that where one defendant is confronted by evidence obtained from a non-testifying co-defendant, the right of confrontation available under the Sixth Amendment is denied even though the jury is instructed not to consider the evidence against the objecting defendant. This is similar to the rule established in *Stallard v. State,* 187 Tenn. 418, 215 S.W.2d 807 (1948). Confronted with the issue in *Stallard,* Mr. Justice Prewitt, in distinguishing between cases in which the co-defendant was available for confrontation (as was Fisher in this case) and a non-testifying co-defendant (as was Carlson), noted:

> In the two cases cited above it appears that in the first-mentioned case there was no real defense offered, and in the second-mentioned case the defendant seeking a severance had every opportunity to cross-examine Alvis, as the latter did not take the stand. The attitude of Alvis being wholly antagonistic, Stallard could not make Alvis his witness as he would have been bound by his statements.

We are not confronted here with the same type of factual situation dealt with in either *Stallard* or *Bruton,* but rather the same principal that makes clear a jury could not possibly be but adversely impressed in its consideration of appellants' position by the admitted conduct of an unconfrontable co-defendant.

The indictment charged that all four defendants "did, on the _____ day of February, 1976, . . . with force of arms . . feloniously . . . put in fear and danger of his life . . . and violently steal . . . from the person . . . of . . . Sid Katz . . . 308 articles of jewelry . . . of the value of $198,-697.35." When the defendant Carlson admitted under oath that the indictment accurately described the offense he had indeed committed, he became a most effective witness against the others named therein. He should have been available for confrontation just as though he had made a statement admitted as evidence containing the facts alleged in the indictment.

There can be no doubt that Carlson's judicial "confession", or plea of guilty, bore directly on the issue of the guilt of the appellants herein. The trial judge based his decision not to charge the lesser included offenses of larceny and the attempt to commit a felony, as requested, partly on the failure to submit a special request, and partly because he felt the evidence did not merit an instruction on the lesser included offenses. He noted in denying the requested instruction, "[T]he Court presented to the jury the charge that it felt applicable based upon the evidence in this case. *The defendant, Carl Carlson, has readily admitted that there was an armed robbery. He admitted his participation in it, and entered a plea of guilty."* (Emphasis supplied.)

The appellants, Henry and Gloria Dorsey, did *not* enter pleas of guilty to armed robbery. Their positions were completely antagonistic to that of their confessing co-defendants, only one of which was available for cross-examination. As our Supreme Court noted (well in advance of *Bruton* in *Stallard, supra:*

> [W]e cannot see how Stallard could receive a constitutional trial without the opportunity of cross-examining Alvis where the State undertook to read this

highly damaging statement to the jury. It may be stated that in all probability the jury would have convicted Stallard of the highest degree of murder in the absence of this written statement of Alvis. This is highly problematical. We cannot afford to speculate on the constitutional rights of Stallard, no matter what our opinion should be after weighing all the facts and circumstances.

I would reverse and remand for a new trial and hold that any lesser included offense should be contained in the jury instructions, even in the absence of a special request as required by *State v. Staggs,* 554 S.W.2d 620 (Tenn.1977).