**STATE of Tennessee, Appellee,**

v.

**Fred ARMES, Appellant.**

Court of Criminal Appeals of Tennessee, Knoxville.

April 9, 1984.

Permission to Appeal Denied by Supreme Court June 18, 1984.

Browder G. Williams, Harriman, for appellant (on appeal).

Fred Armes, pro se (at trial).

William M. Leech, Jr., State Atty. Gen. & Reporter, John F. Southworth, Jr., Asst. State Atty. Gen., Nashville, for appellees (on appeal).

Charles Hawk, Dist. Atty. Gen., Edward P. Bailey, Roger Delp and Frank Harvey, Asst. Dist. Attys. Gen., Kingston, for appellees (at trial).

## OPINION

*Abridged For Publication*

BYERS, Judge.

Armes was convicted of petit larceny with punishment fixed at not less than two nor more than three years, forgery with punishment set at not less than three nor more than three years, and transferring a forged instrument with punishment fixed at not less than three nor more than five years. Armes was then found to be an habitual offender and sentenced to life imprisonment.

The judgments are reversed and the cases are remanded for a new trial.

The defendant has filed thirteen assignments of error which we have considered. [*Nine assignments found to be without merit are omitted from the published opinion.*]

We find four assignments to have merit which entitles the defendant to reversal of the judgments and a new trial.

First, the trial court erred in allowing the defendant to proceed to trial in this case without the assistance of counsel and in denying his request for the assistance of counsel once the trial had commenced.

At the arraignment of the defendant, the defendant notified the court that he did not have an attorney because he had not had an opportunity to get one. The defendant informed the court he would employ counsel. Sexton, the codefendant, had counsel at this appearance and waived formal arraignment. Armes said he would want formal arraignment. The trial court then formally arraigned Armes, who entered a plea of not guilty to all charges. This was done without benefit of counsel. The court then set a trial date. Subsequent to this, Armes made another appearance in court without counsel.

On April 23, 1982, these cases were called before the court, and Armes was asked if he had counsel. When Armes said he did not, the court asked if he wished to proceed on a motion to quash, which he had filed pro se. Armes responded that he did. Armes then made a motion to quash the indictment and a motion that the trial judge recuse himself.[1] After these motions were disposed of, the state called upon Armes to give notice of an alibi defense if he intended to use such defense. Armes announced he so intended and orally gave the names of the alibi witnesses, the addresses of the witnesses, and the substance of the testimony the witnesses would give.

The following colloquy took place then concerning whether Armes had an attorney:

MR. ARMES: I imagine at this time it would be premature to make a Motion for Continuance. Apparently I am going to have to seek counsel and I've—

THE COURT: You mean you don't have a lawyer?

MR. ARMES: Your Honor, I've consulted with several attorneys and they either are involved in some other litigation that I'm involved in as the Tommy Ocoe Warner case up here; I'm to be called as a witness in it and I have two civil cases pending in Anderson County and all the attorneys that I know are somehow or other involved in something else. I need more time to find an attorney.

THE COURT: Well, this is a late date to be announcing it to the Court.

MR. ARMES: I know it is, Your Honor, but I'd rather do it today as to come over here Tuesday and...

THE COURT:. Who have you tried to hire?

MR. ARMES: Harry Lillard and uh—

THE COURT: Well, he announced here in open court the first day that he wasn't going to represent you.

MR. ARMES: Your Honor, did I do that?

THE COURT: No, he did. He said he was not in any criminal cases involving anybody down here; he was appearing for Mr. Shultz for purposes of arraignment and said he would not be representing anybody in Criminal Court.

MR. ARMES: I don't blame him; that's not his best field, but I've also consulted with a law firm over in Clinton, Ridenour, Ridenour, Ridenour and Shumate, etc.; Buxton, I've consulted with Buxton and Mr. Qualls' assistant, Browder Williams. I believe his father passed away, so I'm certain that he's not going to be available.

THE COURT: He will be available next week, I'm sure; his father died yesterday.

MR. ARMES: Well, due to the serious nature of the charges, Your Honor, I would certainly appreciate anything—

THE COURT: Can you afford to hire you a lawyer?

MR. ARMES: I've been debating, you know; I'm involved in a deal to buy a restaurant, and since I can't run it from Nashville, I don't know whether to hire an attorney or buy a restaurant right now, and I was supposed to sign the closing papers on that day with Mr. Jake Vann, and I just felt—

THE COURT: Well, if you can afford to hire you an attorney, I'm not going to appoint you one then, but we are going to have the trial Tuesday. This is too late a date to be coming in; you are too familiar with the court processes to do that sort of thing. If you had—

MR. ARMES: Well, I just did not believe that the Attorney General would want to go to trial on an indictment like that, Your Honor.

THE COURT: Well, apparently they do.

MR. ARMES: Apparently he does, so I...

THE COURT: So you may lead them into error.

---

1. Armes did a fair job of presenting his argu-   ment on the motions.

MR. ARMES: I don't care about leading them into error, Your Honor; those appellate processes are awful slow.

THE COURT: So, Tuesday morning.

On April 27, 1982, the following transpired:

This cause came on to be heard and was heard on the 27th day of April, 1982, ... and the following proceedings were had, to-wit:

THE COURT: Do you have an attorney?

MR. ARMES: No, Your Honor.

THE COURT: So you have decided not to get you an attorney?

MR. ARMES: Well, I spoke to Mr. Browder Williams yesterday and he said that he would not be doing anything until Thursday; he's uh, you know, his father's died and he's pretty upset about it; he didn't want to talk about anything.

THE COURT: Well, are you going to hire him?

MR. ARMES: No, I'm not, Your Honor.

THE COURT: Well, it doesn't make any difference whether you talk to him or not.

MR. ARMES: At this time I don't feel like that I will hire an attorney.

THE COURT: Well, that's all I needed to know.

At another pre-trial hearing, in November, the trial judge offered to appoint stand-by counsel to assist Armes. Armes refused this offer and said he would represent himself. The court allowed Armes to represent himself on the basis of this statement.

■ A criminal defendant has the constitutional right to represent himself in a trial. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *State v. Burkhart*, 541 S.W.2d 365 (Tenn.1976). He also has the constitutional right to counsel to assist him in his defense. In cases where an accused represents himself, the question is whether the defendant knowingly and voluntarily waives the right to counsel. Our rules of procedure, Tenn.

R.Crim.P. 44(a), provide that an indigent defendant is entitled to appointment of counsel unless he executes a waiver of counsel. This rule requires the trial judge to advise the defendant of the right to counsel and determine if the waiver is a knowing and intelligent waiver of counsel. The waiver must be in writing and spread upon the minutes of the court.

■ In this case, the record is not clear whether the defendant was able to afford counsel or not, and it is not clear whether the requirements of Rule 44(a) apply to other than indigent defendants. However, we are of the opinion that it was error for the minutes of the court not to show a voluntary and knowing waiver of the right to counsel in this case, at least in the absence of any determination of indigency of the defendant. It is clear that the defendant in several preliminary proceedings desired counsel but represented himself before the court. In fairness to the trial judge, we note he did orally advise the defendant of his right to counsel and the pitfalls which could snare him. Nevertheless, we believe the best procedure would require a written waiver of counsel in all cases where an accused insists on self-representation.

■ Second, the trial court erred in advising the jury that the codefendant Sexton had changed his plea to one of guilty and in having the codefendant Sexton state in the presence of the jury that the facts charged in the third count of the indictment were true.

The defendant was jointly indicted with Billy Joe Sexton on the charges of forgery and passing of a forged instrument. After the jury had been selected, pleas entered, and the jury sworn, the following took place before the jury:

THE COURT: Ladies and gentlemen, while you have been out, by negotiated plea, the defendant, Billy Joe Sexton has changed his plea to a Plea of Guilty on the third count of the indictment, which is Passing a Forged Instrument over the value of $200.00.

THE COURT: Mr. Sexton, I understand that is your negotiated plea that you made with the Attorney General during the recess?

MR. SEXTON: Yes, sir, I did.

THE COURT: And that under the third count, you are charged that you did pass to Delta Marketing, d/b/a Red Ace 59, a check in the amount of $250.00 to a Jimmy Williamson, upon the account of Southern Salvage, Wendell Smith; And with the signature of Wendell Smith on it, and that check was false, forged, or counterfeit, and you either knew or should have known that the same was false, forged and counterfeit; is that true?

MR. SEXTON: That's correct.

THE COURT: General, is it a part of the negotiated plea that you are recommending that the jury fix his punishment at a minimum of three years and a maximum of three years in the state penetentiary (sic)?

ASST. GENERAL HARVEY: Yes, Your Honor.

The third count of the indictment charged the defendant Armes and Sexton with jointly passing the forged instrument.

When the trial judge started to impose sentence on Sexton, in front of the jury, the state asked that this not be done and that Sexton stay in the trial as a defendant until its completion, and to then allow the jury to set his sentence. Sexton's lawyer agreed to this.

We don't know what purpose the state had in this. However, with Sexton as a defendant, Armes might very well have found himself frustrated had he attempted to call Sexton as a witness in an effort to cross-examine him about the factual confession which, based on the allegations in the indictment, confessed Armes guilty also.

The record reflects that the state agreed that if the jury were to give Sexton a sentence greater than the three years recommended, the court could correct the sentence without objection from the state.

Sexton's attorney joined in this agreement also.

The state relies upon the cases of *State v. Coleman,* 619 S.W.2d 112 (Tenn.1981) and *Dorsey v. State,* 568 S.W.2d 639 (Tenn. Cr.App.1978), to assert there was no error in the action of the trial judge in accepting the plea of Sexton. The circumstances in *Coleman* and *Dorsey* are significantly different than are the circumstances in this case.

In *Dorsey* and *Coleman,* the pleas of guilty did nothing to implicate the other defendant or defendants. In this case, the trial judge, in front of the jury, elicited from Sexton the statement that the facts alleged in the third count of the indictment were true. Because this allegation was that Armes and Sexton passed the forged instrument, Sexton's statement implicated Armes also. We think this was error which requires a reversal of this case and a new trial.

■ It was also error for the district attorney general to comment on and argue to the jury about an alleged armed robbery conviction of the defendant when this matter was never proven by competent evidence.

The count of being an habitual offender contained an allegation of armed robbery in Kentucky in 1965. The state put on no evidence that Armes had been convicted of armed robbery in Kentucky as alleged in the indictment.

Armes called his mother as a witness, and in cross-examination she was asked if Armes had been convicted of armed robbery in Kentucky in 1965. The witness responded that she did not remember but if they had him up there they probably convicted him. Based on this, the state argued strongly to the jury about the dangerous character of the defendant because of this armed robbery. Although the defendant did not object to this, we are of the view the state erroneously argued that he was convicted of armed robbery in the absence of any evidentiary support for this in the record.

■ Finally, the trial court erred by improperly refusing to allow the defendant to cross-examine the witness Branson concerning a prior inconsistent statement made by her.

After Branson, a key prosecution witness testified, Armes attempted to cross-examine her from a previous statement which was taken from her by Sexton's lawyer. Sexton's lawyer objected to Armes using this because it was part of his work product. Armes apparently had secured a copy of the statement from Sexton, who had obtained it from his lawyer. The trial judge sustained the objection and refused to allow Armes to use the statement. We are of the opinion this was error. Sexton was out of the case, he was merely sitting at trial because of the agreement between him and the state. This statement would not have enlarged or diminished his punishment. Although this statement may well have been the work product of the lawyer at one time, when Sexton, the client, gave it to Armes it was no longer exclusive, and Armes should have been allowed to use the statement.

The state correctly points out that because the statement is not before us, we cannot determine if there were inconsistent statements therein. However, the record shows that Armes, upon the court's ruling, asked to make the statement an exhibit. The court would not allow him to do so.

Together, these errors, pertaining to the defendant's right to counsel and to his right to test the evidence against him require that the judgment be reversed and remanded for further proceedings.

O'BRIEN, J., concurs.

TATUM, J., concurs in result, see separate opinion.

TATUM, Judge, concurring.

I concur that it was error for the trial judge to accept Sexton's guilty plea and statement of fact in the presence of the jury. I also think that it was error when the trial judge refused to permit the defendant to cross-examine the State's witness with the previous statement.

I do not think that it was error for the trial judge to permit the defendant to go to trial without a lawyer. As noted in the main opinion, the trial judge warned the defendant of the consequences of self-representation. The defendant did not claim to be an indigent; the record suggests that he was not. The only reason that the defendant did not have counsel was his refusal to employ counsel. I do not understand that the trial judge is required to appoint an attorney for a non-indigent defendant who has had ample time in which to retain an attorney.

I think that the defendant waived error when he failed to object to the State's argument concerning the armed robbery conviction in Kentucky.

I concur in the result.