IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
March 6, 2001 Session

## JAMES BYRON TRANSOU v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Madison County**
**No. C99-296    Joe C. Morris, Chancellor**

---

**No. W2000-01060-CCA-R3-PC  - Filed May 25, 2001**

---

The petitioner, James Byron Transou, appeals the trial court's denial of his petition for post-conviction relief.  The issues presented for review are (1) whether the petitioner was denied his constitutional right to self-representation; (2) whether the denial of a motion for continuance is a basis for relief; (3) whether the election on the charge made by the state is a basis for relief; and (4) whether the petitioner was denied the effective assistance of counsel.[1]  The judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed.**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

Rolf G. S. Hazlehurst, Jackson, Tennessee (on appeal), and Ramsdale O'DeNeal, Jackson, Tennessee (at trial), for the appellant, James Byron Transou.

Paul G. Summers, Attorney General & Reporter; J. Ross Dyer, Assistant Attorney General; and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On May 20, 1996, the petitioner was convicted of attempted first degree murder and aggravated assault.  The trial court imposed concurrent, Range II sentences of 35 years and eight years.  On direct appeal, this court affirmed the conviction for attempted first degree murder and reversed and dismissed the conviction for aggravated assault.  State v. James Byron Transou, No.

---

[1]The petitioner listed as an issue for review whether the post-conviction court had erred by denying a continuance of the hearing.  Because the petitioner did not brief the issue, made no citations to the record, and failed to present argument or reference any authority for his position, the issue has been waived.  See generally State v. Aucoin, 756 S.W.2d 705 (Tenn. Crim. App. 1988).

02C01-9703-CC-00125 (Tenn. Crim. App., at Jackson, Apr. 21, 1998). On December 14, 1998, our supreme court denied application for permission to appeal.

The convictions were based upon an August 18, 1995, shooting. The victim, Terrance Woods, had been dating Tammy Curry, a former girlfriend of the petitioner, with whom the petitioner had a five-year-old son. The proof at trial established that the petitioner encountered the victim at a car wash, pulled alongside the victim's automobile when the victim tried to drive away, and fired three or four shots through the passenger's side window. One bullet struck a tire on the victim's automobile. The other three grazed the passenger's side door. While uninjured by any of the shots, the victim lost control of his car and spun into a vacant lot. Vanessa Robertson witnessed the shooting. She saw the petitioner, whom she identified as the driver of the vehicle, fire several shots towards the victim's car. She stated that the petitioner was accompanied by his brother, Keith Transou, who was in the passenger's seat. There were two other witnesses to the shooting. One stated that the petitioner was in the vehicle from which the shots were fired but was unable to say which of the two occupants fired the shots. The other witness heard the gunshots, saw the victim's car spin out of control, and saw another car speed away. There was also evidence provided at trial that the petitioner owned a .38 revolver. Police recovered three .38 caliber bullet casings at the scene of the shooting.

The petitioner claimed self-defense. While acknowledging that he was in possession of a .38 pistol, he claimed that the victim, who was also armed, was the aggressor. Petitioner, who had a significant prior criminal record which included convictions of robbery, aggravated assault, and forgery, insisted that his brother, Keith Transou, had fired the shots out of fear of the victim. Keith Transou, however, denied having fired any of the shots and, alleging that the victim was following the Transous in his vehicle, testified that the petitioner had attempted to shoot the victim.

In his petition for post-conviction relief, as amended, the petitioner alleged, among other things, that the state had failed to properly elect between the two charges in the indictment, that he had not been allowed to properly proceed pro se, and that he had been denied the effective assistance of counsel at trial and on appeal.

The record establishes that the petitioner's trial was set for May 20, 1996. A little over a month earlier, the petitioner forwarded a letter to the trial judge, asking that his trial counsel[2] be removed from the case. Shortly thereafter, the petitioner notified his trial counsel, Pamela Drewery, who had been appointed on December 5, 1995, the date of the arraignment, of his desire to proceed "pro persona with my next attorney." About one week before the trial, the trial court apparently conducted a hearing wherein the petitioner, after being warned of the dangers of self-representation, was nevertheless permitted to proceed pro se. While the trial court made reference to the proceeding

---

[2]Pamela Drewery represented the petitioner from the time of his arraignment until the conclusion of his trial. Daniel Taylor represented the petitioner at the motion for new trial, the sentencing hearing, and on direct appeal. Ms. Drewery is alternately referred to as trial counsel. Mr. Taylor is alternately referred to as appellate counsel.

just prior to the trial, there is no transcript of that hearing in the record. The petitioner denied any such hearing took place.

On the day of trial, the petitioner filed a motion for continuance on the grounds that he was "not comp[e]tent to pro[c]eed pro se." On the morning of the trial, the petitioner, who had previously demanded a speedy trial, was denied his request for a continuance. The trial court directed Ms. Drewery, who had continued to monitor the progress of the case, to re-assume her responsibilities as counsel. Trial counsel acknowledged that she had represented the petitioner continuously from December 5 until less than two weeks before the trial. While the record establishes that trial counsel had the assistance of an investigator and was fully aware of the proof that the state intended to put forth, she described the petitioner as generally uncooperative in the trial preparations. She assured the court that even though she had treated the petitioner with "courtesy and respect" throughout her term of employment, the petitioner would not discuss the case with her.

At the evidentiary hearing, the petitioner testified that sometime after trial counsel had been appointed, "the attorney/client communication broke down." The petitioner acknowledged that prior to trial he recognized that he had the option to seek another attorney or to proceed pro se. The petitioner contended that at one point his trial counsel sought permission to withdraw. His recollection was that the trial judge denied the request, even though he had stated a preference to proceed pro se.[3] He asserted that he was forced to go to trial without having the benefit of investigation and without having formulated a theory of defense. The petitioner conceded that his trial counsel provided him with copies of the indictment, the names of the witnesses, and the reports of the police. He complained that counsel was ineffective for having failed to prepare any defense and contended that his trial counsel never had the opportunity to talk with his witnesses, Jarvis Pate and his brother, Keith Transou, before trial.

On cross-examination, the petitioner denied that he had filed a motion for continuance containing an admission that he was not competent to proceed pro se. He testified that the motion was "not [his] handwriting." The petitioner acknowledged that on the morning of trial the trial court re-appointed Ms. Drewery to represent him. He was unable to explain, however, why he failed to protest the re-appointment of trial counsel by re-asserting his right of self-representation. After reviewing the transcript, he conceded that "it's nowhere in this record where I corrected his . . . understanding that I wanted to be represented."

The petitioner testified that on the day before the trial, he did not know whether he would be represented by Ms. Drewery. He explained that, "I didn't know if they were going to let me represent myself or appoint me another attorney. But if I couldn't get another attorney, I would rather have proceeded pro se."

Ms. Drewery was called as a witness at the evidentiary hearing by the petitioner. She recalled that the petitioner had been belligerent and had stated that he did not want her as his attorney. She

---

[3]Judge Franklin Murchison presided at the trial.

stated that despite her conflict with the petitioner, she was aware that she would be expected to be ready for trial. It was her opinion that the trial court believed that the petitioner had asked for her withdrawal and had requested self-representation in an effort to delay the trial.

Appellate counsel, Daniel Taylor, also called as a witness for the petitioner, testified that he had been assigned the case after Ms. Drewery left the public defender's office. He recalled that in the defendant's motion for new trial, he had challenged the sufficiency of the evidence, alleged jury impropriety, and claimed error due to the denial of the motion for continuance. He stated that the motion was amended to include the allegation that there could not be dual convictions under the evidence presented at the trial. He acknowledged the incongruity of the petitioner's request for a continuance and his previous demand for a speedy trial.

At the conclusion of the evidentiary hearing, the trial court ruled that prior to trial, the petitioner had withdrawn his request to proceed pro se. The trial court also concluded that the petitioner had failed to establish that he had been denied the effective assistance of counsel.

I

In this appeal, the petitioner first asserts that he was denied his constitutional right to self-representation and, as a result, was forced into a trial with the assistance of a lawyer "with whom he was dissatisfied, and with whom he would not cooperate." In a related claim, the petitioner contends that he is entitled to relief because the trial court abused its discretion by denying his request for a continuance.

Every person has a constitutional right to represent himself. U.S. Const. amend. VI; Tenn. Const. art. I, § 9; Faretta v. California, 422 U.S. 806, 818-820 (1975). In State v. Herrod, this court ruled that the exercise of the right of self-representation is based upon three conditions:

(1)     The defendant must timely assert his right to self-representation;

(2)     the exercise of the right must be clear and unequivocal; and

(3)     the defendant must knowingly and intelligently waive his right to assistance of counsel.

754 S.W.2d 627, 629-30 (Tenn. Crim. App. 1988). A defendant need not have legal training or experience in order to competently and intelligently elect self-representation. Faretta, 422 U.S. at 835; see generally Smith v. State, 987 S.W.2d 871 (Tenn. Crim. App. 1998).

When an accused desires to proceed pro se, the trial judge must conduct an intensive inquiry as to his ability to represent himself. State v. Northington, 667 S.W.2d 57, 61 (Tenn. 1984). The waiver of the right to counsel must be knowingly and intelligently made. Tenn. R. Crim. P. 44(a); State v. Armes, 673 S.W.2d 174, 177 (Tenn. Crim. App. 1984).

The burden is on a post-conviction petitioner to establish his factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). In this appeal, the burden is on the petitioner to show that the evidence preponderates against the trial court's findings that he had withdrawn his claim for self-representation. See Brimmer v. State, 29 S.W.3d 497, 508 (Tenn. Crim. App. 1998).

In our view, the record supports the trial court's finding that the petitioner waived the right to represent himself. There is evidence to support the trial court's conclusion that the petitioner made a written acknowledgment of his incompetence to proceed. That the petitioner did not reassert his right to self-representation, even as Ms. Drewery was being re-established as his counsel, supports the findings made upon the conclusion of the evidentiary hearing.

Before the replacement or substitution of appointed counsel, there must be a showing of good cause for doing so, which may include a conflict of interest or a complete breakdown of communication. United States v. Gallop, 838 F.2d 105, 108 (4th Cir. 1988). A defendant may not, however, manipulate his counsel in order to delay or disrupt a trial. United States v. Fowler, 605 F.2d 181, 183 (5th Cir. 1979). Most importantly, perhaps, a defendant does not have the right to appointed counsel of his choice. See Morris v. Slappy, 461 U.S. 1 (1983); State v. Timothy M. Reynolds, No. M1998-00059-CCA-R3-CD (Tenn. Crim. App., at Nashville, Jan. 7, 2000).

Here, the record establishes that when the petitioner appeared in court on the trial date, he acknowledged his inability to represent himself and, faced with a choice of self-representation or proceeding to trial with his previously appointed counsel, chose to proceed with the assistance of his previous counsel. At the evidentiary hearing, the petitioner second-guessed his decision, testifying that he would have preferred self-representation had he known he would not be appointed another attorney. Ironically, the record of the evidentiary hearing establishes that the petitioner placed his post-conviction counsel in a similar position to that of his trial counsel just before the hearing began. When the case was called, post-conviction counsel stated as follows:

> I have talked with him, had an opportunity to talk with him, on a couple of occasions . . . . He has . . . informed me that there are some issues and some other things that he has some concerns about. In the light of that, he is . . . asking for a continuance . . . . [I]n terms of what he told me, I probably wouldn't feel too comfortable going ahead [with representing him] at this time.
>
> I do feel I'm somewhat prepared to represent him with respect to those issues, but obviously I want him to feel comfortable, in that it is his day in court and he wants to make sure he maximizes any and all defenses in the case law that might be available to him. And he just informed me of that.

Post-conviction counsel stated that the petitioner had "not been comfortable with [him] and probably hasn't been comfortable with anybody. . . . I don't know if he's playing a game with the court or not." After reviewing this record, it is difficult to avoid the inference that the petitioner not

only wanted the appointed counsel of his choosing but also one who could prevail over the interests of the state. Absent the latter as an alternative, he would then elect to proceed pro se. In this instance, the petitioner failed at the time of trial to make a clear and unequivocal assertion of his right to self-representation. In fact, the record demonstrates he opted to withdraw his request and continue with his previous counsel rather than proceed pro se. The record demonstrates that any lack of communication between the petitioner and his trial counsel prior to the commencement of trial was the fault of the petitioner. Trial counsel afford opportunities for communication to the petitioner and the petitioner, by all appearances, failed to take full advantage thereof.

II

As to the denial of his motion for a continuance, the petitioner asserts that he met with Ms. Drewery only three times prior to trial and never discussed his case with her on any of those occasions. While acknowledging that it may have been "because [his] behavior was like it was," the petitioner explained that "she told [him his] chances for defense," and that it "seemed like she didn't want to put on [a] defense." While conceding that the petitioner would not fully discuss the case with her, Ms. Drewery, whose term of representation had extended for a period of six months, did express a willingness to serve as counsel, did have the services of an investigator in trial preparation, and did have the benefit of knowing the proof the state intended to offer at trial.

Typically, the decision of whether to grant a continuance rests within the discretion of the trial court. State v. Seals, 735 S.W.2d 849, 853 (Tenn. Crim. App. 1987). The grant or refusal of a continuance rarely implicates a constitutional right. It is only when the proceeding is fundamentally unfair as the result of the denial of a continuance that a proper collateral attack is warranted. Conner v. Bowen, 842 F.2d 279, 283 (11th Cir. 1988). In State v. Covington, 845 S.W.2d 784, 787 (Tenn. Crim. App. 1992), this court ruled that a continuance should generally be granted when the accused would not otherwise be "afforded his constitutional right to the effective assistance of counsel."

It is our view that the trial court did not abuse its discretion by denying the motion for a continuance. Whether the petitioner would be entitled to a new trial, under these circumstances, would depend upon whether he was denied the effective assistance of counsel. As indicated in the last section of this opinion, it is our view that he was not denied that right.

III

Next, the petitioner contends that the state should have been required to make an election on the charge to be submitted to the jury. Any failure to elect should have been presented either as an issue on direct appeal or as part of a claim that his trial or appellate counsel was ineffective. Yet the petitioner actually prevailed on this issue on direct appeal in that one of the two convictions was set aside. As indicated, this court determined that the evidence was sufficient to support the conviction for attempted first degree murder. While the evidence was also sufficient to support a conviction of aggravated assault, the state conceded in the direct appeal that the latter conviction should be

-6-

reversed and dismissed under the principles established in <u>State v. Denton</u>, 938 S.W.2d 373, 381 (Tenn. 1996). <u>State v. James Byron Transou</u>, slip op. at 7-8.

In our view, the issue, while couched in different terms, has been previously determined. <u>See</u> Tenn. Code Ann. § 40-30-206(h); <u>House v. State</u>, 911 S.W.2d 705, 710 (Tenn. 1995). The claim is not, therefore, a basis for post-conviction relief.

IV

As his final issue, the petitioner argues that his counsel was ineffective for having failed to argue that dual convictions for attempted first degree murder and aggravated assault violated due process and double jeopardy principles. The petitioner also asserts that his counsel was ineffective for having inadequately investigated the case, failing to file any meaningful pretrial motions, and failing to develop a close working relationship with him.

There is a constitutional right to the effective assistance of counsel at all critical stages of a criminal prosecution. Tenn. Const. art. 1, § 9; <u>Powell v. Alabama</u>, 287 U.S. 45, 57 (1932). In order for the petitioner to be granted relief on grounds of ineffective counsel, he must establish that the advice given or the services rendered were not within the range of competence demanded of attorneys in criminal cases and that, but for his counsel's deficient performance, the result of his trial would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984); <u>Baxter v. Rose</u>, 523 S.W.2d 930 (Tenn. 1975).

The petitioner must prove his factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). The claim of ineffective assistance of counsel is a mixed question of law and fact and subject to de novo review; however, a trial court's findings of fact, while reviewed de novo, include a presumption of correctness unless the preponderance of the evidence is otherwise. <u>Fields v. State</u>, 40 S.W.3d 450, 456-57 (Tenn. 2001). An appellate court may neither reweigh the evidence nor substitute its own inferences for those drawn by the trial court. <u>Henley v. State</u>, 960 S.W.2d 572, 578-9 (Tenn. 1997). Conclusions of law are reviewed under a de novo standard. <u>Fields</u>, 40 S.W.3d at 457.

Initially, only one of the petitioner's convictions was allowed to stand. As indicated, on direct appeal, this court set aside the aggravated assault conviction as violative of double jeopardy principles. The petitioner has not, therefore, been prejudiced by any failure on the part of his counsel to raise the issue during the course of the trial.

Furthermore, trial counsel testified that the petitioner, who testified on his own behalf at trial, was able to put on all of the proof he desired. The petitioner's brother, whom he blamed for the shooting and wanted as a witness, identified the petitioner as the gunman who fired the shots at the victim. The record also supports the trial court's conclusion that trial counsel's investigators had interviewed the witnesses and that trial counsel was fully aware of the proof the state intended to produce against the petitioner.

More importantly, the petitioner failed to point out how he was prejudiced by any deficiencies in the representation of his trial counsel, including her alleged failure to adequately communicate in advance of the trial. The petitioner was unable to produce any witnesses at the post-conviction hearing that may have provided beneficial testimony. Other than the double jeopardy claim, the petitioner failed to point to any pretrial motions that may have been helpful to the defense. Under these circumstances, this court cannot conclude that the petitioner was denied the effective assistance of counsel at trial.

It is also our conclusion that the petitioner was not denied the effective assistance of counsel on appeal. The petitioner's only complaints are that appellate counsel failed to present his claim that he had been denied the right of self-representation and that his counsel otherwise made no inquiries about the pretrial and trial stages of the proceeding.

Because the petitioner withdrew his request for self-representation just prior to trial, it is our view that the petitioner was not prejudiced by the failure of his appellate counsel to present the issue for our review. Moreover, the petitioner has not established how he might have been prejudiced by any failure on the part of his appellate counsel to further investigate the proceedings which took place prior to the verdict.

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE