IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs October 2, 2018

**WILLIAM FARMER v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 15-06277      J. Robert Carter, Jr., Judge**

_____

**No. W2017-00729-CCA-R3-PC**

_____

The Petitioner, William Farmer, appeals the post-conviction court's denial of his petition for post-conviction relief in which he challenged his guilty plea to carjacking and his ten-year sentence. On appeal, the Petitioner contends that he received ineffective assistance of counsel and that his guilty plea was not knowingly entered. After a review of the record and applicable law, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Stephen K. Barnes (at hearing and on appeal) and Michael R. Working (on appeal), Memphis, Tennessee, for the appellant, William Farmer.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Amy Weirich, District Attorney General; and Leslie Fouche, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**PROCEDURAL AND FACTUAL BACKGROUND**

The Petitioner's plea agreement is the result of a carjacking which he committed with two co-defendants. According to the prosecutor's statement of facts at the plea hearing, the Petitioner and his co-defendants approached the victim's car while it was stopped at an intersection. One of the co-defendants, armed with a black handgun, overpowered the victim, and the victim exited the vehicle. The perpetrators' vehicle was

stopped almost immediately after the carjacking, and the police apprehended the Petitioner and one of the co-defendants. The victim later identified the Petitioner as one of the individuals involved in the carjacking

The indictment charged the Petitioner and two co-defendants with carjacking, employing a firearm during the commission of a dangerous felony, and evading arrest. The Petitioner pleaded guilty to one count of carjacking. As part of the plea agreement, the Petitioner's other charges were dismissed. The Petitioner received a sentence of ten years to be served as a Range I standard offender at thirty percent.

During the plea hearing, the Petitioner affirmed that he understood he was waiving his right to a jury trial, his right to confront witnesses, his right to call witnesses on his own behalf, and his right to appeal. The trial court asked the Petitioner if trial counsel "discussed any possible defenses and all the usual things before you made this decision." The Petitioner responded, "Yes, sir." The Petitioner signed the plea agreement, which stated that he understood the nature of the charges against him and what the State would have had to prove to establish his guilt. The trial court accepted the plea and entered the agreed-upon sentence.

The Petitioner timely filed a petition for post-conviction relief arguing that he was denied effective assistance of counsel and that his plea was not knowing and voluntary. He argued that his trial counsel was ineffective because he failed to inform him about the *Bruton* rule as it relates to the admissibility of his co-defendant's statement. *See generally United States v. Bruton*, 391 U.S. 123 (1968).

During an evidentiary hearing, the Petitioner testified that trial counsel met with him approximately six times, with two of those meetings occurring outside of the courtroom. The Petitioner stated that trial counsel mailed him a discovery packet, but that trial counsel never discussed the discovery with him. The Petitioner said the majority of the time he spent with trial counsel was dedicated to discussing a motion to suppress the co-defendant's statement that the Petitioner wanted trial counsel to file. The Petitioner testified at the post-conviction that trial counsel said the "co-defendant would testify against me." When post-conviction counsel asked the Petitioner, "Did [trial counsel] tell you that was definitely going to happen or maybe going to happen," the Petitioner responded, "he just described it as I ain't have no luck."

On cross-examination, the Petitioner testified that "*Bruton* wasn't mentioned to me." The Petitioner maintained that his understanding of the plea agreement was limited to a comprehension of the terms of his sentence. He said he only "acted like he understood" the plea agreement at the time he signed it. He later admitted that he understood that as part of the plea agreement, the State was going to drop the firearms

charge that required the six-year minimum sentence to be served at one hundred percent. Further, the Petitioner testified that he made the decision to enter the plea after trial counsel explained the terms of the plea agreement.

Trial counsel agreed with the Petitioner that he met with him two times outside of court and four times in court. Trial counsel testified that it was his practice to mail discovery packets to his clients to allow them to review the documents prior to meeting with them. When trial counsel met with the Petitioner, they "discussed all of his concerns and issues with everything." Trial counsel acknowledged that he never mentioned *Bruton* by name to the Petitioner, but he discussed the possibility of the co-defendant testifying if the Petitioner proceeded to trial. Trial counsel testified that "we did discuss the co-defendant being able to testify against him . . . and I didn't say for certain he would testify against him." Trial counsel explained that he used the co-defendant's statement as a negotiation tool because the co-defendant's statement revealed that the Petitioner did not have the gun during the carjacking. The firearm charge carried a mandatory six-year sentence required to be served in its entirety and consecutively to any other sentence. After meeting with three different prosecutors, trial counsel was able to negotiate a plea deal for the Petitioner where the firearm and evading arrest charges were dismissed, and the Petitioner pleaded guilty only to the carjacking charge.

Trial counsel also testified that he thoroughly discussed all of the other evidence implicating the Petitioner. This evidence included the victim's identification of the Petitioner and the fact that police officers apprehended the Petitioner in the stolen vehicle shortly after the offense. Because the Petitioner was focused on suppressing the co-defendant's statement, trial counsel urged him to consider the overwhelming nature of the evidence against him absent the statement. After these discussions, the Petitioner decided to enter the plea agreement.

The post-conviction court denied the Petitioner relief, finding that trial counsel was not ineffective and that the Petitioner entered the plea knowingly. The post-conviction court found that trial counsel explained the evidence that the Petitioner could potentially face, including the co-defendant's statement, if he proceeded to trial. Specifically, the post-conviction court found that "counsel may not have quoted the case name, but discussed the matter with Petitioner in a way that explained both possibilities for the trial." Further, the post-conviction court found that trial counsel explained the other evidence against the Petitioner. The post-conviction court found that the Petitioner's guilty plea was "clearly knowingly and intelligently entered." The Petitioner timely appealed.

- 3 -

## ANALYSIS

The Petitioner argues that he is entitled to post-conviction relief for two reasons. First, he claims that he received ineffective assistance of counsel. Second, he claims that because he was not informed regarding the admissibility of the co-defendant's statement, he did not enter his plea knowingly, voluntarily, and intelligently. The State disagrees and argues in response that the Petitioner did receive effective assistance of counsel and entered his plea knowingly, voluntarily, and intelligently.

A petitioner is entitled to post-conviction relief from any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. The petitioner has the burden of proving the allegations of fact in the petition by clear and convincing evidence. T.C.A. § 40-30-110(f); *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff*, 297 S.W.3d at 216 (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)).

Both a claim of ineffective assistance of counsel and a claim that a guilty plea was not knowing and voluntary are mixed questions of law and fact. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015); *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010). An appellate court reviews de novo with no presumption of correctness the post-conviction court's conclusions of law, its determinations of mixed questions of law and fact, and its application of law to factual findings. *Kendrick*, 454 S.W.3d at 457. "The trial judge's findings of fact are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings." *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003).

### A. Ineffective Assistance of Counsel

To establish an ineffective assistance of a counsel claim, the Petitioner "must show that counsel's performance was deficient and that the deficiency prejudiced the defense." *Wiley v. State*, 183 S.W.3d 317, 329 (Tenn. 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 692 (1984); *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996)). This court "need not address both elements if the petitioner fails to demonstrate either one of them." *Kendrick*, 454 S.W.3d at 457. To establish deficiency, the Petitioner is required to show that trial counsel's actions "fell below an objective standard of reasonableness under prevailing professional norms." *Wiley*, 183 S.W.3d at 329. Trial counsel's performance is not deficient when the advice given is "within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930,

936 (Tenn. 1975). In order to establish prejudice as a result of trial counsel's deficient performance, the Petitioner "'must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different.'" *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). When the case involves a guilty plea, "a petitioner must establish that but for counsel's deficiency; he would have gone to trial instead of entering the plea of guilty." *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

The Petitioner asserts that trial counsel was ineffective because he did not discuss the rule articulated in *United States v. Bruton*, 391 U.S. 123 (1968). In *Bruton*, the United States Supreme Court held that admission of a statement of a non-testifying co-defendant which expressly incriminates the complaining defendant violates the complaining defendant's constitutional right of confrontation. 391 U.S. at 126; see U.S. Const. amend. VI; Tenn. Const. art. I, § 9. "[T]he rule in *Bruton* does not apply to confessions which do not implicate the non-confessing defendant, nor does it apply to confessions from which all references to the moving defendant have been effectively deleted, provided that, as deleted, the confession will not prejudice the moving defendant." *Dorsey v. State*, 568 S.W.2d 639, 642 (Tenn. 1978) (citations omitted). The Petitioner maintains on appeal that trial counsel's failure to discuss *Bruton* caused him to believe that his co-defendant would be required to testify against him.

The post-conviction court credited trial counsel's testimony that he reviewed the potential evidence during his six meetings with the Petitioner and discussed the co-defendant's statement and any plea offers that the State proposed. Trial counsel also discussed with the Petitioner the possibility that his co-defendant could testify against him. Trial counsel said that he spent a large amount of time with the Petitioner discussing that, even if the co-defendant's statement was suppressed, there was a significant amount of evidence against the Petitioner. This evidence included the victim identifying the Petitioner and the police arresting the Petitioner after removing him from the stolen, wrecked car. The post-conviction court credited trial counsel's testimony that he advised Petitioner of his exposure, discussed the potential evidence against Petitioner, and negotiated a settlement of the case that Petitioner decided to accept.

This court "will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve." *Vaughn*, 202 S.W.3d at 115 (quoting *Nichols*, 90 S.W.3d at 586). We conclude that the Petitioner has failed to demonstrate that trial counsel was deficient. We need not address the second *Strickland* element because the Petitioner has failed to establish that trial counsel's performance was deficient. *Kendrick*, 454 S.W.3d at 457.

**B. Knowing, Voluntary, and Intelligent Plea**

The Petitioner also argues that he did not knowingly enter his plea because his trial counsel did not explain whether his co-defendant's statement was admissible and in what capacity the statement could be used. The Petitioner maintains that his ignorance of the rule in *Bruton* rendered his plea involuntary. The State responds that the Petitioner's plea was entered into knowingly because trial counsel explained that it was only a possibility that his co-defendant's statement could be admitted, and the Petitioner chose to enter the plea with that knowledge. We agree with the State.

A guilty plea must be entered voluntarily, knowingly, and intelligently to satisfy the due process requirement. *Lane*, 316 S.W.3d at 562. A plea is not voluntary if it results from "'ignorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats ....'" *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting *Boykin*, 395 U.S. at 242-43). This court considers the totality of the circumstances, including evidence at the post-conviction hearing, to determine whether a guilty plea was entered voluntarily, knowingly, and intelligently. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995).

A plea is not entered into intelligently or knowingly unless the petitioner had "a full understanding of what the plea connotes and of its consequences." *Blankenship*, 858 S.W.2d at 904. In determining whether a guilty plea was voluntary and intelligent, we look to several factors including:

> The relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Id.*

The post-conviction court found that the Petitioner fully understood the consequences of his guilty plea. The Petitioner understood the sentence that would be imposed when he entered the guilty plea, as well as the sentence he was facing if he pursued a trial. Trial counsel explained to the Petitioner what the proof would be at trial if the co-defendant's statement were not admitted into evidence. By entering into the plea, the Petitioner avoided the evading arrest and firearms charges and the mandatory consecutive sentence the firearm charge required. During the plea hearing, the Petitioner

confirmed that before he entered the plea he and trial counsel "discussed any possible defenses" and that he was entering the plea freely and voluntarily. His "solemn declaration[ ] in open court carr[ies] a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 75 (1977). When the Petitioner entered the plea, he created a "formidable barrier in any subsequent collateral proceedings*." Id.* The post-conviction court found that the Petitioner's plea "was clearly knowingly and intelligently entered."

The Petitioner was informed about all of the evidence that potentially could be introduced if he were to proceed to trial. He understood the sentence he would serve if he accepted the plea agreement and the potential sentences he was facing if he proceeded to trial. Therefore, the Petitioner is not entitled to relief on the ground that his plea was not knowing and voluntary.

## CONCLUSION

Based on the foregoing, the judgment of the post-conviction court is affirmed.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE