IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 5, 2021

**JAMARCES J. WATSON v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Rutherford County**
**No. F-80859      David Bragg, Judge**
_____

**No. M2020-01693-CCA-R3-PC**
_____

The Petitioner, Jamarces J. Watson, pleaded guilty to two counts of especially aggravated kidnapping and eight counts of aggravated robbery, and the trial court sentenced him to an effective sentence of forty years of incarceration. The Petitioner filed a *pro se* petition for post-conviction relief, which the post-conviction court summarily dismissed. On appeal, the Petitioner contends that the post-conviction court erred because: (1) his trial counsel was ineffective for failing to inform him of the required jury instruction pursuant to *State v. White*, 362 S.W.3d 559 (Tenn. 2012) and because he failed to investigate the case; (2) the trial court improperly ruled that he forfeited his right to counsel; (3) he was denied his right to a speedy trial; and (4) the cumulative effect of the errors entitled him to relief. After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J. and ROBERT L. HOLLOWAY, JR., J., joined.

Benjamin Lewis, Murfreesboro, Tennessee, for the appellant, Jamarces J. Watson.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Senior Assistant Attorney General; Jennings H. Jones, District Attorney General; and Shawn Puckett, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**
**A. Guilty Plea**

This case arises from the Petitioner's participation in multiple robberies in and around the campus of Middle Tennessee State University in 2016. In November 2016, and

for his participation in these robberies, Rutherford County grand jury indicted the Petitioner for multiple felonies, including especially aggravated kidnapping, aggravated robbery, aggravated burglary, and employment of a weapon during the commission of a dangerous felony.

In its order denying post-conviction relief, the post-conviction court summarized the history of this case as it related to his representation leading up to the Petitioner's guilty pleas. It stated:

> The [P]etitioner was first appointed counsel [(Counsel #1)] in the Rutherford County General Sessions Court on July 22, 2106. The same counsel, who represented the Petitioner at his preliminary hearing, was appointed to represent him following his arraignment on November 28, 2016. Counsel file a motion to withdraw based on complaints by the Petitioner, his request he withdraw, a breakdown in communications, and because the Petitioner had filed a complaint against him with the Board of Professional Responsibility. The motion was granted in Count on June 2, 2017.

> The Court appointed new counsel [(Counsel #2)] for the Petitioner on the same day. On September 5, 2017, the Petitioner and a co-defendant asked the Court to set their case for trial. The trial was set for a seven day trial to be held beginning December 11, 2017. [The] Petitioner's co-defendant entered pleas to six counts of especially aggravated kidnapping and two counts of aggravated robbery on December 6, 2017. On December 8, the last judicial day before the trial was set to begin, [the] Petitioner's second counsel appeared before the court and stated the Petitioner had filed a complaint against him with the Board of Professional Responsibility. [The] Petitioner's counsel made an oral motion to withdraw. The Court interviewed the Petitioner and granted counsel's motion. The Court warned the Petitioner his third counsel was the last counsel to be appointed and if he failed to cooperate with his counsel the court would allow [the] Petitioner to represent himself and appoint his counsel to sit as elbow counsel.

> The Court appointed trial counsel [(Counsel #3] on December 8, 2017. On January 18, 2018, the Petitioner's trial was reset to begin on April 23, 2018.

On April 19, 2018, represented by Counsel #3, the Petitioner pleaded guilty to eight separate counts of aggravated robbery, a Class B felony, which each carried a sentence range of between eight and twelve years at 85%. He also pleaded guilty to two counts of especially aggravated kidnapping, a Class A felony, which each carried a sentencing range of between fifteen and twenty-five years, to be served at 100%. The parties agreed to allow

the trial court to determine the length and manner of service of his sentences. The State then articulated the proof had the case gone to trial:

[The] proof would show that on July 15th of 2016, the [Petitioner], . . . and two Co-Defendants, Kenterrius Turner and Quintshay Shannon, set about committing a string of robberies in and around the M.T.S.U. Campus.

The first robbery that was committed was on a victim named John Walker. And a wallet and cash and a phone was taken from that victim. . . .

The second robbery was of Ryan Ho. And the location of that was in the very same area [as the first]. Taken from this victim was a backpack, a Nexus 5 phone.

After that robbery, the [Petitioner and his two Co-Defendants traveled to a location near the M.T.S.U. Campus of Womack Apartments. Officers responded to the scene after the robbery and conducted a search of the area, and located two male subjects that matched the description of Mr. Watson and Mr. Shannon.

Officer Mario Hussey attempted to make contact with the subjects who then fled on foot. Officer Hussey gave them commands to stop, and they continued to run. Both subjects were apprehended a short time later by M.T.S.U. Officers. They were identified as Mr. Shannon and Mr. Watson.

During the investigation, Mr. Shannon admitted that Mr. Watson held a gun to Elizabeth Myers's head while in the parking lot. They then walked to apartment L026 where the victim, Ms. Myers, stated that she lived, although she did not actually live at that apartment.

When another subject answered the door, they proceeded to go in and rob the other individuals inside the apartment. In the apartment, in addition to Ms. Myers when stepped in with the Defendants, were Kaleb Tench, Hayden Gist, Gentry George, Colin George, and Rafeal Gonzalez.

All of these victims were held against their will at gunpoint by Mr. Watson and Mr. Shannon. And several of them were duct taped and assaulted. And Ms. Myers was forced to take some of her clothes off.

Items were taken from all of the victims in this case. And some kind of liquid was poured on the victims. The victims believed that they were urinated on by the [Petitioner].

3

After being arrested in the vicinity of the robbery and questioned, found on [the Petitioner] at the time when he was booked was a bag of marijuana that had been taken from Mr. Tench, which was later identified by Mr. Tench.

Victims were able to both at the scene and at the preliminary hearing identify [the Petitioner] as the person that held a gun on them and held them against their will in this apartment. And all of these events occurred in Rutherford County.

At the guilty plea hearing, the Petitioner indicated he understood the agreement and that he was represented by Counsel #3, who had discussed the agreement with him. The trial court then went over the rights that the Petitioner was waiving by entering his plea and ensured that the Petitioner understood those rights. The Petitioner agreed that the facts as announced by the State were essentially true and correct. The Petitioner said that he had not been rushed or pressured into pleading guilty today and that he had no complaints about his Counsel #3. The trial court accepted his guilty pleas and set a sentencing hearing for June 29, 2018.

Before the sentencing hearing, on May 25, 2018, Counsel #3 filed a motion to withdraw based on the Petitioner's filing of a complaint against him with the Board of Professional responsibility.

On August 23, 2018, the trial court held a hearing on the Petitioner's request to withdraw his guilty plea and a sentencing hearing. The Petitioner, representing himself, then orally withdrew his motion to withdraw his guilty plea, and the parties proceeded with the sentencing hearing. At the sentencing hearing, the trial court heard from multiple victims. At the conclusion of the hearing, the trial court sentenced the Petitioner to a total effective sentence of forty years, two consecutive twenty-year sentences for the especially aggravated kidnapping convictions and eight concurrent ten-year sentences for each of the aggravated robbery convictions. The judgments of conviction are not included in the record.

## B. Post-Conviction

On February 19, 2019, the Petitioner filed a *pro se* petition for post-conviction relief. The post-conviction court appointed counsel to represent the Petitioner. Appointed counsel filed an amended petition, and, on November 19, 2020, the post-conviction court held a hearing on the petition.

Petitioner's post-conviction counsel made an opening statement during which he stated that the Petitioner's only allegations were against Counsel #3, who represented him at the time of his guilty plea hearing. He then asserted that the Petitioner would not have

4

pleaded guilty had he known that the trial court would have instructed the jury pursuant to *White,* which requires the trial court to provide a more specific instruction on kidnapping charges as to whether the removal or confinement of a victim is essentially incidental to any accompanying offense. The Petitioner's counsel next contended that the Petitioner had been incarcerated for twenty-six months before his trial and he had communicated with Counsel #3 about a speedy trial but that Counsel #3 never pursued that motion. Further, he contended that the trial court erred when it determined that he had forfeited counsel. He states that none of his actions were significant enough to lead to a forfeiture or a waiver of counsel. Petitioner's counsel noted that the Petitioner had alleged that Counsel #3 was ineffective because he did not investigate his case or investigate the victims and their criminal histories.

The Petitioner testified that, after he entered his guilty plea, he believed he should ask Counsel #3 to remove himself from his case. The Petitioner contended that, after he entered his guilty pleas but before he was sentenced, he told Counsel that he did not want to go forward with his guilty plea but wanted to go to trial. Counsel #3 told him that he could not withdraw his plea. The Petitioner researched the issue and found that he could withdraw his guilty plea, so he filed a complaint with the Board of Professional Responsibility about Counsel #3. The Petitioner identified a letter that he wrote to Counsel #3 on May 22, 2018, asking him to file a motion to withdraw his guilty plea. The Petitioner said he felt that Counsel #3 had "lied" to him about the ability to file a motion to withdraw his plea, and he informed the Board of this fact. He said his sentencing was still set for a hearing.

The Petitioner did not specifically recall whether there was a hearing on whether he had forfeited his right to an attorney. He opined that none of his actions should have resulted in such a forfeiture, so moving forward with the sentencing hearing was inappropriate without the trial court appointing him another attorney.

The Petitioner said that, after Counsel #3 withdrew, the Petitioner learned about a *White* instruction through his research on Westlaw. The Petitioner testified that, had he known about the *White* instruction he would have insisted on going to trial. He believed that the jury would have convicted him of either kidnapping or robbery because there was not substantial evidence of both. Neither the trial court nor Counsel #3 discussed a *White* instruction with him.

The Petitioner testified that, two months after Counsel #3 began representing him, he asked Counsel #3 to file a motion regarding a speedy trial because he had been incarcerated for twenty-six months. Counsel's failure to file this motion, he asserted, was ineffective.

The Petitioner finally contended that Counsel #3 failed to investigate the witnesses in his case. He did not check to see if any of them had criminal backgrounds.

5

For these four reasons, the Petitioner said, his guilty plea was not knowingly and voluntarily entered. He asked the post-conviction court to grant him a new trial.

During cross-examination, the Petitioner agreed that he was hopeful that by pleading guilty he would receive a sentence similar to what his co-defendant received, sixteen years. The Petitioner identified his guilty plea documentation. He agreed that he had indicated on it that he was entering his plea freely and voluntarily, that no one had promised him anything regarding sentencing, and that he had not been rushed or pressured into entering the plea.

The Petitioner agreed that Counsel #3 was appointed in December 2017. The next court date was January 11, 2018.

Counsel #3 testified that he got the case set for trial within a month of being appointed to represent the Petitioner. Counsel wrote the Petitioner approximately twenty letters, confirming his discussions with the State, his court appearances, his discussions with the Petitioner's family, and his meetings and conversations with the Petitioner. Counsel provided the Petitioner with copies of all the pretrial motions and the court's rulings and discussed how Counsel anticipated the proof to play out in a jury trial. Counsel said that the State's case was "strong." The Petitioner's co-defendant had received a sentence of sixteen years to be served at 100%. Counsel said the State rejected every offer that Counsel made and told him that they would only settle for a sentence of between twenty and twenty-five years, at 100%. The Petitioner, however, never gave him authority to make that offer.

The plea agreement that the State entered into was for the Petitioner to plead guilty to two kidnappings and eight robberies but the State would dismiss "a bunch of other charges, including kidnappings."

Counsel said that he filed a motion to get the names of the victims and their criminal histories. The State provided him that information.

Counsel said that he reviewed the negotiated plea agreement with the Petitioner "line by line." Further, this was the second negotiated plea agreement that Counsel had reviewed with the Petitioner.

During cross-examination, Counsel testified that he did not discuss a *White* instruction with the Petitioner. He said it was not applicable in this case. He testified that the proof was that the Petitioner held one of his kidnapping victims at gunpoint in the parking lot of a dorm. He then took her upstairs to an apartment. The victim went to a different room where there were multiple other individuals. The victim was then tied up.

The multiple other people were also tied up. He said that the multiple kidnappings were not used to facilitate the robbery, so the instruction was not be warranted.

Counsel explained why he withdrew from the case before sentencing. He said that on April 23, the Petitioner sent him a letter regarding the names of witnesses for the sentencing hearing. On April 25 Counsel wrote the Petitioner advising him about his pleas and that the sentencing hearing was set for June 29. Counsel asked the Petitioner for names of family and friends who could testify at sentencing. On May 2, Counsel sent the Petitioner a letter regarding mitigating factors. On May 3, Counsel spoke with the Petitioner's mother and his sister about the sentencing hearing. On May 7, Counsel received from the Petitioner saying that he was unhappy and wanted Counsel to see him as soon as possible. On May 14, Counsel and the Petitioner met at jail to discuss sentencing. The Petitioner told him during that meeting that he had sent a letter to the Board about Counsel's representation of him. Counsel said that the Petitioner never mentioned wanting to withdraw his guilty plea during their meeting. Later that day, Counsel received a letter, dated May 10, with the Petitioner's request to back out of the sentencing. It did not mention the guilty plea.

Counsel said that, after the Petitioner complained to the Board, Counsel felt that it was his ethical duty to withdraw from the case. Counsel said that he did investigate the victims and their backgrounds. He did not speak with every single one, but, he explained that he did not think that cross-examining them about their background was a successful strategy. He noted that the kidnapping victims had been bound and urinated on, so he felt that discussing whether they had committed a previous crime would have disfavored the Petitioner. Counsel noted that the Petitioner sent him a letter thanking him for his representation. He did not express any displeasure with his representation.

Based upon this evidence, the post-conviction court dismissed the Petitioner's petition. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the post-conviction court erred because: (1) his trial counsel was ineffective for failing to inform him of the required jury instruction pursuant to *State v. White*, 362 S.W.3d 559 (Tenn. 2012) and because he failed to investigate the case; (2) the trial court improperly ruled that he forfeited his right to counsel; (3) he was denied his right to a speedy trial; and (4) the cumulative effect of the errors entitled him to relief.

### A. Ineffective Assistance of Counsel

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2018). The petitioner bears the burden of proving factual

allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2018). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against it. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely *de novo* review by this court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim of ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must

be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994). In the context of a guilty plea, as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of *Strickland*, the petitioner must show that there "is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (footnote omitted); *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997)

### 1. *White* Instruction

The Petitioner first contends that Counsel #3 was ineffective for failing to inform him about the *White* instruction. The State counters that the post-conviction court did not err when it denied relief on this claim because the facts did not warrant a *White* instruction.

In its written order dismissing the post-conviction petition, the post-conviction court found:

> The Petitioner's charges were based on multiple events with multiple victims. In the last series of crimes, the [P]etitioner and a co-defendant attempted to rob a victim in an apartment parking lot and then ordered her at gunpoint to take them to her apartment. The victim led them to a different apartment occupied by five people. The [P]etitioner forced all six victims to

9

get on the floor and robbed them of their wallets. The [P]etitioner then assaulted the group by kicking them and hitting them with his gun. The [P]etitioner urinated on the victims while they were on the floor. The [P]etitioner then forced them to remove their clothes and bound them with duct tape while holding them at gunpoint. The Court finds there is more than enough evidence for a reasonable person to find the [P]etitioner's aggravated robbery of the six victims took place prior to their confinement and interference with their liberty.

[The] Petitioner failed to present any proof demonstrating any deficiency in trial counsel's representation as to this issue. Petitioner testified he entered a plea in hopes of receiving a similar "deal" (sentence) to his co-defendant. The co-defendant entered pleas to two counts of aggravated robbery and six counts of especially aggravated kidnapping. [The] Petitioner has failed to show how not knowing a jury instruction would have changed the outcome of his case. The burden in a post-conviction case is on [the] Petitioner to demonstrate his claim by clear and convincing evidence. [The] Petitioner has not done so on this issue, therefore this claim is without merit.

After review, we conclude that the evidence does not preponderate against the post-conviction court's findings. In *White*, our supreme court delineated a new test for determining whether dual convictions for a kidnapping-related offense and another felony offense are permissible pursuant to due process principles. The *White* court determined that a separate due process inquiry was unnecessary and concluded that a proper jury instruction in conjunction with an appellate review of sufficiency of the evidence satisfied due process principles. *White*, 362 S.W.3d at 577-78; *see Cecil*, 409 S.W.3d at 609. The *White* instruction requires a trial court to provide a jury instruction "defin[ing] the key element [of the kidnapping-related offense]--the substantial interference with the victim's liberty--as requiring a finding by the jury that the victim's removal or confinement was not essentially incidental to the accompanying felony offense." *White*, 362 S.W.3d at 580. As the post-conviction court concluded in this case, the Court finds there is more than enough evidence for a reasonable person to find the Petitioner's aggravated robbery of the six victims took place prior to their confinement and interference with their liberty. Because a *White* instruction was not warranted, Counsel #3 did not render ineffective assistance when he failed to inform the Petitioner about such instruction.

## 2. Investigation

The Petitioner next contends that Counsel was ineffective for failing to investigate the case. He took issue with the fact that Counsel did not check to see if the victims had a criminal background. The State counters that the Petitioner did not present any evidence

10

about what information further investigation by Counsel would have revealed. By failing to do so, he was not proven he is entitled to post-conviction relief.

About this issue, the post-conviction court found that the Petitioner had not met his burden of proof because he had failed to present any evidence supporting his claim. We agree. In general, when an ineffective assistance of counsel claim is predicated upon trial counsel's failure to introduce evidence, such evidence that could be used to cross-examine a victim, the evidence should be offered at the post hearing in order for the post-conviction court to determine whether the failure to call a witness or introduce evidence prejudiced the petitioner. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). At the post-conviction hearing, Counsel said that he did review the backgrounds of the victims but he felt that, considering the Petitioner's actions during the offenses, it would have not been prudent to cross-examine the victims about their backgrounds. The Petitioner had first failed to provide any such relevant criminal background investigation evidence and next failed to prove why Counsel's strategy in this regard was unreasonable. Given the post-conviction court's finding, and the lack of support for the general investigation claim, Petitioner failed to establish that trial counsel was deficient or that his investigation was inadequate. He is not entitled to relief on this issue.

## B. Forfeiture of Right to Counsel

The Petitioner next contends that the post-conviction court erred when it denied him relief because he had not forfeited his right to Counsel at the sentencing hearing. The State counters that the trial court did not find that the Petitioner had forfeited his right to Counsel but instead it was the Petitioner to asked to proceed pro se.

The post-conviction court found:

> The argument [that the Petitioner was denied his right to counsel during the sentencing hearing] is contrary to the record in this case. The [P]etitioner entered his pleas on April 17, 2018. The Court set a sentencing hearing in [the] Petitioner's case for June 29, 2018. Trial counsel testified he met with the [P]etitioner and made preparations for the sentencing hearing. Trial counsel filed a Notice of Mitigating Factors to be considered. [The] Petitioner informed trial counsel on May 14, 2018, he had filed a complaint against him with the Board of Professional Responsibility. Trial counsel received confirmation of the complaint from the Board on May 23, 2018, and filed a motion to withdraw on May 25, 2018. The Court granted the motion on June 6, 2018. [The] Petitioner advised the Court he planned to retain counsel for his sentencing hearing. The Court reset the sentencing hearing. On May 22, 2018, and June 11, 2018, the Petitioner sent pro-se motions to the Court stating he would like to withdraw his plea based on the ineffective assistance of his counsel because counsel failed to explain the

11

consequences of his plea. He stated he wanted to represent himself in each letter.

On August 23, 2018, the [P]etitioner appeared before the Court. The Court discussed his pro-se filings with the [P]etitioner. The Court asked [the] Petitioner if he wanted to go forward with his motion to withdraw his plea. The [P]etitioner told the Court he wanted the Court to deny his motion and go forward with his sentencing. The Court asked the [P]etitioner if he wanted to strike his motion, represent himself and go forward with his sentencing. The [P]etitioner answered affirmatively. The Court went forward with the sentencing hearing.

The [P]etitioner was given a copy of his pre-sentence report and given time to review it. The State made a correction on the report and presented the testimony of one of the victims. The [P]etitioner did not cross-examine the witness. The Court asked [the] Petitioner if he wished to present proof or make a statement on his own behalf. The Court explained the difference between testifying as a witness and making a statement of allocution. The [P]etitioner chose to make a statement. Following his statement, the State presented a brief argument and the [P]etitioner presented a response.

The Court did not force or coerce the [P]etitioner to proceed at his sentencing hearing without counsel. The [P]etitioner addressed the Court after filing a pro-se motion to withdraw his plea. The pro-se motion stated the [P]etitioner would represent himself on the motion. The [P]etitioner withdrew his motion when he appeared in Court and stated he wanted to go forward with the sentencing hearing. The [P]etitioner stated, "What I can do is be a man and own up and say I would like to apologize to any harm that I have caused to some of those accusations."

The [P]etitioner failed to present any evidence the Court forced him to forfeit his right to counsel at his sentencing hearing. The burden in a post-conviction case is on [the] Petitioner to demonstrate his claim by clear and convincing evidence. He has not done so on this issue, therefore this claim is without merit.

We agree with the post-conviction court. In *State v. Carruthers*, our supreme court recognized that a defendant in a criminal case may involuntary waive or forfeit his constitutional right to counsel "by utilizing that right to manipulate, delay, or disrupt trial proceedings." 35 S.W.3d 516, 549 (Tenn. 2000). In that case, the defendant treated a series of appointed lawyers in an abusive manner, and our high court ruled that the right to counsel "may not be used as a license" to derail the administration of justice. *Id*.; *see also United States v. Flewitt*, 874 F.2d 669 (9th Cir. 1989); *Berry v. Lockhart*, 873 F.2d 1168

12

(8th Cir. 1989). In *United States v. White*, 529 F.2d 1390, 1393 (8th Cir.1976), the right to counsel was described as "a shield, not a sword."

While one may forfeit the right to counsel by misconduct, this court, citing *United States v. McDowell*, 814 F.2d 245 (6th Cir. 1987), has suggested a specific procedure for those who, absent misconduct requiring forfeiture, might voluntarily waive a right to counsel and exercise the option of self-representation. *See Smith v. State*, 987 S.W.2d 871, 875 (Tenn. Crim. App. 1998). During the trial process, every person has a constitutional right to represent himself. U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *Faretta v. California*, 422 U.S. 806, 818-20 (1975). In *State v. Herrod*, this court ruled that the exercise of the right of self-representation is based upon three conditions:

(1) The defendant must timely assert his right to self-representation;
(2) the exercise of the right must be clear and unequivocal; and
(3) the defendant must knowingly and intelligently waive his right to assistance of counsel.

754 S.W.2d 627, 629-30 (Tenn. Crim. App. 1988). A defendant need not have legal training or experience in order to competently and intelligently elect self-representation. *Faretta*, 422 U.S. at 835; *see generally Smith v. State*, 987 S.W.2d 871 (Tenn. Crim. App. 1998).

When an accused desires to proceed *pro se*, the trial judge must conduct an intensive inquiry as to his ability to represent himself. *State v. Northington*, 667 S.W.2d 57 (Tenn. 1984). The waiver of the right to counsel must be knowingly and intelligently made. Tenn. R. Crim. P. 44(a); *State v. Armes*, 673 S.W.2d 174, 177 (Tenn. Crim. App. 1984).

In this case, the Petitioner was represented by multiple attorneys, three of which he filed board complaints against. He filed a motion to withdraw his guilty plea, which he discussed with the trial court before sentencing. The Petitioner asked the trial court to deny this motion so that they could proceed with sentencing. The trial court ensured that the Petitioner wanted to proceed *pro se*, and the Petitioner, who we will note was articulate and well-spoken, assured the trial court that he wanted to represent himself. The Petitioner expressed his desire to own up to his transgressions. We conclude that the Petitioner's waiver of counsel at sentencing was knowingly and intelligently made and that he his not entitled to post-conviction relief on this issue.

## C. Speedy Trial

The Petitioner contends that he is entitled to post-conviction relief because he was denied his right to a speedy trial. The State counters that the post-conviction court correctly denied the Petitioner relief because Counsel was the Petitioner's third attorney and obtained a trial date within a month of his being appointed.

13

About this issue, the post-conviction court found:

> [The] Petitioner argues trial counsel failed to file a motion for a speedy trial in spite of his repeat4ed requests. This argument is contrary to the record in this case. Trial counsel was appointed by the Court on December 8, 2017. Trial counsels et the case for trial on January 18, 2018, just over one month from his appointment. The trial was scheduled to begin on April 23, 2018. On April 17, 2018, the Petitioner appeared in court with trial counsel and entered pleas of guilty to two counts of especially aggravated kidnapping and eight counts of aggravated robbery with length and manner of his sentence to be determined by the Court at a sentencing hearing to be held on June 29, 2018. The Court received a letter from the Petitioner on May 25, 2018, wherein the Petitioner states he would like to withdraw his peals, fire his attorney and represent himself. The [P]etitioner states in this letter he was "railroaded" which is contrary to his claim that he failed to receive a speedy trial.

> The only delay in this case is the result of the Petitioner's failure to cooperate with appointed counsel. The burden in a post-conviction case is on [the] Petitioner to demonstrate his claim by clear and convincing evidence. [The] Petitioner has not done so on this issue, therefore this claim is without merit.

Both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution guarantee an accused the right to a speedy trial. *See* U.S. Const. amend VI; Tenn. Const. art. 1, § 9. The right to a speedy trial is also statutorily protected in Tennessee. *See* T.C.A. § 40-14-101 ("In all criminal prosecutions, the accused is entitled to a speedy trial and to be heard in person and by counsel."). In addition, Rule 48(b) of the Tennessee Rules of Criminal Procedure provides that the court may dismiss the indictment if there is unnecessary delay in bringing a defendant to trial. Tenn. R. Crim. P. 48(b). "The purpose of the speedy trial guarantee is to protect the accused against oppressive pre-trial incarceration, the anxiety and concern due to unresolved criminal charges, and the risk that evidence will be lost or memories diminished." *State v. Utley*, 956 S.W.2d 489, 492 (Tenn. 1997) (citing *Doggett v. United States*, 505 U.S. 647, 654 (1992)).

When evaluating claims of a speedy trial violation, we apply the four-part balancing test set forth in *Barker v. Wingo*, 407 U.S. 514 (1972). *See also State v. Bishop*, 493 S.W.2d 81, 83-85 (Tenn. 1977) (adopting the *Barker* analysis in Tennessee). The *Barker* factors are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) the prejudice to the defendant because of the delay. *Barker*, 407 U.S. at 530; *Simmons*, 54 S.W.3d at 759. "The factors relevant to a speedy

trial inquiry are interrelated and depend upon the particular circumstances of each case." *Simmons*, 54 S.W.3d at 762 (declining to articulate a bright-line rule for speedy trial claims); *see also Barker*, 407 U.S. at 530 ("A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis."). If a reviewing court concludes that the accused has been denied the right to a speedy trial, the only remedy is reversal of the conviction and dismissal of the indictment. *See Barker*, 407 U.S. at 522; *Bishop*, 493 S.W.2d at 83.

The Petitioner was first appointed Counsel #1 on July 22, 2016, shortly after his arrest. His trial was not set until April 23, 2018. The length of the delay in this case is sufficient to trigger the speedy trial analysis. Next, we must consider the reason for the delay. The reasons for post-accusation delay generally fall within four categories: (1) intentional delay to gain a tactical advantage over the defense or to harass the defendant; (2) bureaucratic indifference or negligence, including lack of due diligence; (3) delay necessary for the fair and effective prosecution of the case; and (4) delay caused, or acquiesced in, by the defense. *State v. Wood*, 924 S.W.2d 342, 346 (Tenn. 1996); *see also Simmons*, 54 S.W.3d at 759. A delay caused or agreed to by the defendant is weighed against the defendant. *Wood*, 924 S.W.2d at 346-47; *see also Barker*, 407 U.S. at 531.

In this case, it is clear that the delay was caused by or agreed to by the Petitioner. The Petitioner filed a board complaint against Counsel #1, causing Counsel #1 to file a motion to withdraw, which the trial court granted on June 2, 2017. Counsel #2 was appointed on the same day. Counsel #2 secured a December 11, 2017 trial date. On December 6, 2017, Counsel #2 informed the trial court that the Petitioner had filed a board complaint against him and asked to withdraw. The trial court appointed Counsel #3 on December 8, 2017, and he secured a trial date on January 18, 2018, for a scheduled trial to begin on April 23, 2018. We conclude, as did the post-conviction court that the reason for the delay weighed against the Petitioner.

Further, the Petitioner does not present what, if any, prejudice he suffered as a consequence of the delay. He makes no mention of prejudice in his brief. Accordingly, the Petitioner has failed to establish deficient performance or prejudice arising therefrom. He is not entitled to relief.

## D. Cumulative Effect

The Petitioner finally contends that he is entitled to relief based upon the cumulative effect of the errors. The State counters that there is no cumulative error. The post-conviction court found that trial counsel was effective and that the Petitioner had not proven otherwise. There was, therefore, no cumulative effect of any error.

Because the Petitioner has not established that trial counsel's performance was deficient, we need not consider the aggregate prejudicial effect of counsel's conduct.

15

### III. Conclusion

Based on the foregoing reasoning and authorities, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE